Philadelphia Civil Service Commission *v.* Wilson, Appellant.

Argued April 27, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

584

*Leon Rosenfield,* with him *John Patrick Walsh* and *Walsh, Tubis & Dunn,* for appellant.

*Abraham L. Freedman,* City Solicitor, with him *Richard H. Markowitz,* Assistant City Solicitor and *Robert M. Landis,* First Deputy City Solicitor, for appellee.

*Gilbert Stein,* with him *Joseph E. Gold,* for interested parties, under Rule 46.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 25, 1953:

Appellant, James R. Wilson, was a detective in the Police Department of the City of Philadelphia. In the early morning of January 5, 1952, he was off duty and in plain clothes driving his own automobile behind a truck that was collecting garbage along the street. He followed it for several blocks, blowing his horn in order to pass it, but he was unable to do so because of its maneuvering. When it came to a stop, Wilson asked the driver to show his credentials. While he was producing them Wilson walked to the front of the truck to note its license number, whereupon it started up, allegedly swerved toward Wilson, and drove off. He thereupon fired five shots in the air and a sixth shot at the truck, but it continued on its way.

Wilson had a hearing before the Police Board of Investigation. The truck driver, his wife and a garbage loader testified that Wilson had shouted at them and threatened them. The driver testified that Wilson

pointed his gun at him and then fired several shots as the truck drove off, one of which struck the tailgate.* The Police Commissioner dismissed Wilson for conduct unbecoming an officer. Wilson appealed to the Civil Service Commission, which upheld the action of the Police Commissioner. It found that Wilson's own admission that he had fired five shots in the air and the sixth "in the direction of" the truck established just cause for his dismissal because the firing of the five shots in the air was "quite unjustified" and the firing of the sixth shot at the truck was "outrageous." Wilson filed exceptions to the decision of the Commission and appealed to the Court of Common Pleas. His contention was that the Police Commissioner had specified as the reasons for dismissal that Wilson had cursed and acted in an unbecoming manner toward the operator of the truck and had fired six shots at the truck one of which pierced the tailgate, whereas no evidence was presented at the hearing before the Civil Service Commission of any such cursing or that he had fired six shots at the truck; his own story was that five of the shots were fired in the air and only one at the tires, and that this last shot did not hit the tailgate. The court pointed out there was nothing in the actions of the operator of the truck to justify Wilson in firing his gun, and that he apparently did so only because of his annoyance at not having been able to pass the truck, there being no ground whatever for any suspicion that the operator had committed a felony. The conclusion of the court, therefore, was that the Police Commissioner and the Civil Service Commission were

---

* These three witnesses were residents of New Jersey, could not be subpoenaed, and did not respond to written notice of the hearing before the Civil Service Commission. But a transcript of their evidence at the Police Board hearing was placed in evidence before the Commission.

amply justified in the decision they made, and that Wilson's appeal should be dismissed. He now appeals from that order of the court below.

The Philadelphia Home Rule Charter adopted by the electors April 17, 1951, effective January 7, 1952, provides in section 7-201 that "Findings and decisions of the [Civil Service] Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds." An act of the legislature approved by the Governor on September 29, 1951, (P. L. 1654) provides that "All decisions of the civil service board or commission in any city shall be subject to appeal to the court of common pleas or the county court of the county in which the city is located"; the provisions of the act were to become effective immediately. We are urged by counsel on this appeal to decide which of these two enactments, the Charter or the statute, is controlling. We find no necessity for doing so on the present record. It is obvious that, on appeals from the Civil Service Commission, Courts of Common Pleas in Philadelphia are invested, both under the Charter and the Act of Assembly, with some measure of review, since under either they may inquire into the jurisdiction of the Commission and the regularity of the proceedings there conducted. It is true that under the statute the appeal is apparently on somewhat broader lines, which would permit the determination of the question as to whether there was any evidence to support the Commission's findings. The question therefore is not whether the Courts of Common Pleas of Philadelphia County have jurisdiction of appeals from the Civil Service Commission, but what is the *extent or scope* of their authority to review the Commission's findings. In the present instance it is ob-

viously unnecessary to determine that question since, in any event, the dismissal of Wilson's appeal by the court below must be affirmed even if the Act of Assembly were to be held controlling, for there was obviously sufficient testimony to justify the action of the Police Commissioner in dismissing Wilson as well as the decision of the Civil Service Commission affirming that dismissal.

It may not be amiss to point out that if, on an appeal to a Court of Common Pleas in Philadelphia from an order of the Civil Service Commission by an employe aggrieved by the decision of the Commission, the court were to hold that its power was limited to an investigation into the jurisdiction of the Commission and the regularity of the proceedings and it therefore sustained the order of the Commission, an appeal by the employe to this court would necessarily raise the question now urged upon us by counsel. Or, if the court on such an appeal were to hold that it had the power to determine whether there was evidence to support the Commission's findings, and it decided that there was no such evidence, and it therefore reversed the order of the Commission, an appeal by the Commission to this Court (assuming that the Commission has a right to appeal) would likewise necessarily raise that question. But the present is not such a case as either of these hypothetical ones.

Order affirmed.