# Philadelphia Civil Service Commission
## v. Connolly

400

[redacted]

*Bernard L. Lemisch,* for appellant.

*Richard H. Markowitz* and *Abraham L. Freedman,* for civil service commission.

DAVIS, J., November 25, 1953.—William J. Connolly, a patrolman with the Department of Police, City of Philadelphia, was dismissed by the police commissioner on May 12, 1952, for allegedly receiving a suit of clothing as a gift from a known gambler.

After his appeal to the civil service commission was denied by the commission, he appealed to this court.

The power of this court to review the merits of the case has been questioned by the City of Philadelphia. It contends that the adjudication of the commission is final and that there can be no appeal on the merits, pointing out that the Philadelphia Home Rule Charter provides in section 7-201 that:

"Findings and decisions of the Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds."

Defendant basically relies on the Act of September 29, 1951, P. L. 1654, 53 PS §304 to establish that this court may review the merits of the cause. This act, inter alia, provides:

"All decisions of the civil service board or commission in any city shall be subject to appeal to the court of common pleas or the county court of the county in which the city is located."

Should we determine this act pertains to the decisions of the Philadelphia Civil Service Commission, then this court must review the case on its merits. In the absence of any limitation as to the scope of the appeal provided for therein, the act must be construed to encompass the commission's decision in its entirety.

The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 58(7), 46 PS §558(7), provides:

"All provisions of a law of the classes hereafter enumerated shall be strictly construed: . . . (7) Provisions decreasing the jurisdiction of a court of record;

"All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

Perhaps oversimplified, the first question presented is which is controlling, section 7-201 of the Home Rule

Charter, or the Act of September 29, 1951, P. L. 1654, 53 PS §304.

The city argues that the Home Rule Charter section is controlling firstly, because it is of a later effective date than the Act of September 29, 1951, even though it was adopted before the latter act and, secondly, because it deals with a matter of strictly municipal concern.

The question whether the charter or the act of assembly is controlling was raised before in Philadelphia Civil Service Commission v. Wilson, 373 Pa. 583, but was not decided and therefore to that extent this is a case of first impression. However, the Supreme Court in the Wilson case did decide that the issue was not whether the commission's decisions were appealable but rather the extent or scope thereof. Quoting from page 586 of Chief Justice Stern's opinion:

"It is obvious that, on appeals from the Civil Service Commission, Courts of Common Pleas in Philadelphia are invested, both under the Charter and the Act of Assembly, with some measure of review, since under either they may inquire into the jurisdiction of the Commission and the regularity of the proceedings there conducted. It is true that under the statute the appeal is apparently on somewhat broader lines, which would permit the determination of the question as to whether there was any evidence to support the Commission's findings. The question therefore is not whether the Courts of Common Pleas of Philadelphia County have jurisdiction of appeals from the Civil Service Commission, but what is the *extent or scope* of their authority to review the Commission's findings."

Significantly in that case the extent and scope of the appeal exercised by the court in fact included the merits of the case without limitation. Otherwise it could not have concluded as it did at page 587:

". . . the dismissal of Wilson's appeal by the court below must be affirmed even if the Act of Assembly were to be held controlling, for there was obviously *sufficient testimony* to justify the action of the Police Commissioner in dismissing Wilson as well as the decision of the Civil Service Commission affirming that dismissal." (Italics supplied.)

We have reviewed the proceedings before the commission and since there is *insufficient* testimony to justify the dismissal of defendant Connolly it becomes necessary to determine the question heretofore undecided, i.e., whether our appellate power is limited only to questions of jurisdiction and procedure.

It is to be observed that it would indeed be frustrating if a court of common pleas, in its appellate jurisdiction over the civil service commission, could only sustain dismissals where proper and could not reverse dismissals where improper.

The city contends that the Home Rule Charter section supersedes the Act of September 29, 1951, because its effective date was declared to be January 7, 1952, notwithstanding the fact that it was adopted April 17, 1951, by the voters of Philadelphia. Neither Locke's Appeal, 72 Pa. 491, nor Belovsky v. Redevelopment Authority of Philadelphia et al., 357 Pa. 329, cited by the city, rules on the question as of when a statute speaks. Farmers National Bank and Trust Company of Reading v. Berks County Real Estate Company et al., 333 Pa. 390, does hold that "as a general rule a statute speaks as of the time when it takes effect and not as of the time it was passed". The Statutory Construction Act of May 28, 1937, P. L. 1019, art. I, sec. 4, as amended, 46 PS §504, provides that laws "enacted finally *at a regular session of the Legislature,* . . . shall be in full force and effect from and after the first day of September next following their final enactment, unless a different date is specified in the

law itself, or if enacted finally after the first day of September of the year of the regular session, . . . the same shall become effective immediately upon final enactment." (Italics supplied.)

Whatever else the Home Rule Charter is, it is not a law finally enacted at a regular session of the legislature. Therefore, whether it supersedes the Act of September 29, 1951, which was enacted at a regular session of the legislature, is not determined by its effective date.

The Home Rule Charter provisions, within the limitations of the First Class City Home Rule Act of April 21, 1949, P. L. 665, sec. 21, 53 PS §3421, supersede all acts affecting the organization, government and powers of such city. These limitations include, among others, the following:

1. That the powers exercised be consistent with the Constitutions of the United States and of the Commonwealth: Section 17.

2. That the powers exercised be in relation to its municipal functions: Section 17.

3. That the provisions of the charter be consistent with specific restrictions, limitations and regulations prescribed in the act, one of which is that no city shall exercise powers granted by acts of the General Assembly which are applicable to all of the cities of the Commonwealth: Section 18(c).

To the extent that section 7-201 of the charter, denying appeal on the merits from decisions of the commission, offends any of the foregoing limitations, it does not supersede the Act of September 29, 1951, which grants appeals on the merits from decisions of the commission.

It should be borne in mind that the conflict between the charter provision and the act encompasses only the power of the Courts of Common Pleas of Philadelphia to review the commission's actions on their merits.

It has not been questioned that the court has the power to review the commission's proceedings in other respects and, as heretofore pointed out, the Supreme Court has so decided: Philadelphia Civil Service Commission v. Wilson, supra.

By this Home Rule Charter provision (section 7-201) the City of Philadelphia would proscribe the jurisdiction and power of this court. Nothing is more fundamental nor firmly established than that the courts of common pleas are not municipal agencies and that their actions are not municipal functions, either in whole or in part. It seems unnecessary to point out that the courts derive their powers from the Constitution and the legislature of the Commonwealth. Article 5, sec. 26, of the Constitution provides in part:

"All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgments of such courts, shall be uniform: . . ."

The courts' powers are granted and taken away by the legislature and may not be limited in any way by the City of Philadelphia. To delegate to the city the power to either add to or detract from the jurisdiction of the several courts of common pleas would be a most unlawful delegation of legislative authority. The legislature cannot abdicate, transfer or delegate its constitutional authority or duty: Holgate Bros. et al. v. Bashore et al., 331 Pa. 255, 259, 260.

The legislature could have limited the courts' appellate power as it did by the Act of May 20, 1937, P. L. 728, which was reviewed in Kaufman Construction Company v. Holcomb et al., 357 Pa. 514. (See also the many cases cited in footnote 2 thereto, at page 518.) But neither city council nor the electorate in adopting the Philadelphia Home Rule City Charter

could so limit the courts' power. The legislature did not limit the courts' appellate powers but specifically granted the appellate power herein under review by its Act of September 29, 1951, supra. In the light thereof, it is Socratic argument to say that since the legislature passed the Home Rule Act, supra, it thereby authorized the curtailment of acts of assembly applicable to the courts of common pleas. The Home Rule Act, supra, limited the charter provisions specifically to municipal functions in section 17 thereof.

The State judiciary performs no municipal function. The fact that the territorial jurisdiction of the State court is contiguous with the city's boundaries does not change the situation. Would anyone suggest that the city could supplant the Public Utilities Commission by attempting to regulate public transportation facilities within its boundaries and justify such an attempt by the powers granted in the Home Rule Act, supra? To ask the question is to answer it.

Even if there were no constitutional question and no municipal function question, it seems that the Act of September 29, 1951, supra, would enable defendant to appeal on the merits by reason of its State-wide applicability.

Section 18(c) of the Home Rule Act, supra, specifically provides that charter provisions shall not supersede "acts applicable to all the cities of the Commonwealth." The city argues that the charter provision in question is of municipal concern only, not of State-wide concern, and therefore not violative of section 18 of the Home Rule Act, citing Lennox et al. v. Clark et al., 372 Pa. 355.

The Supreme Court decided Civil Service Commission v. Wilson, supra, after the Lennox v. Clark case, and did not decide in the Wilson case that the question herein under consideration is of municipal con-

cern only. Further, the Act of September 29, 1951, confers jurisdiction as to appeals from decisions of civil service boards or commissions on a State-wide basis, and therefore affects the Civil Service Commission of Philadelphia equally with the commissions or boards of other cities in Pennsylvania. The standards of hiring, firing and performance are in no way either prescribed or imposed upon the commission by the act in question. The charter specifically provides in section 7-303 that "Any dismissal or demotion . . . shall be for just cause only." As the Act of September 29, 1951, applies to Philadelphia, neither the commission nor defendant is held to a different standard imposed by the legislature from that prescribed in the charter. The city, without interference from the legislature, can set its own standards of performance and administer its own offices. Reviewing its actions is different from proscribing its actions. The latter might offend the principle of Lennox v. Clark, supra; the former does not.

There is a further compelling reason why we must review this matter on its merits, although the parties did not address themselves to it. A significant fact should be considered: defendant was dismissed from the service for an act which allegedly occurred on February 27, 1948. At that time he was under civil service as now. At that time neither the Home Rule Act nor the city charter thereunder had been adopted. At that time he was as responsible as now for the consequences of his act. Yet if he had been discharged then instead of now, his discharge would have been reviewable by the court. See Gartland v. City of Philadelphia, 70 D. & C. 161 (1950). To deny him the right of review because his discharge is effected years later, after a new charter is adopted, is to give retroactive effect to both the Home Rule Act and the city charter. Neither act provides for such retroactive

application. Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act itself: Kunze v. Duquesne City, 126 Pa. Superior Ct. 43. We find no declaration in the subject legislation giving it retroactive effect to any extent.

Since defendant had the right before the enactment of the charter to a review on the merits, even if limited to a determination whether there was substantial evidence to sustain the commission's action and no abuse of discretion by it (Gartland v. City of Philadelphia, supra) to deny him such a right at this time is to give retroactive effect to the charter provision in question, viz., section 7-201.

Our Supreme Court has held:

"The law of the case at the time when it became complete is an inherent element in it, and if changed or annulled, . . . justice is denied, and the due course of law violated": Kay v. Pennsylvania Railroad Co., 65 Pa. 269, 277; quoted with approval in Revel v. Standard Sanitary Manufacturing Company, 340 Pa. 313, 319. See also Commonwealth ex rel. Kelly v. Brown, 327 Pa. 136, 142, and Menges v. Dentler, 33 Pa. 495, 498, cited therein.

While defendant has no proprietary interest by reason of his employment, he does have contract rights and obligations thereunder. By depriving him thereof, the obligation of contract is impaired in contravention of both the Federal and State Constitutions.

In Beaver County Building & Loan Association v. Winowich et ux., 323 Pa. 483, the Supreme Court stated at page 492 et seq.:

"Few clauses of the federal constitution have been the subject of more interpretation by the Supreme Court of the United States than that which forbids a state from impairing the obligation of contracts. At first there was confusion arising from a somewhat shadowy distinction between the contract itself and

the remedies to enforce it, (see *W. B. Worthen Co. v. Kavanaugh*, 295 U. S. 56, 60) but the decisions have gradually clarified this difficulty, so that the governing principles are now reasonably well defined. Stating them in broad outline, to the extent to which they are pertinent, they may be summarized as follows:

"1. Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract: *Story's Commentaries on the Constitution*, Book 3, ch. 34, sec. 1379. . . .

"5. The remedy, or means of enforcing a contract, is a part of its obligation which the constitution protects. The legislature has the power to formulate, alter and suspend modes of procedure, even as to pre-existing contracts, provided that, under the guise of a procedural statute, it does not deprive a party of any substantial right under the contract: *Breitenbach v. Bush*, 44 Pa. 313, 318, 320; *Penrose v. Erie Canal Co.*, 56 Pa. 46, 48; *West Arch Building & Loan Association v. Nichols*, 303 Pa. 434. Any change in procedure which does not supply an alternative remedy, equally adequate and efficacious, in place of that which existed when the contract was made, is violative of the constitutional prohibition. The ideas of right and remedy are inseparable: *Greene v. Biddle*, 8 Wheat. 1, 17; *Walker v. Whitehead*, 16 Wall. 314, 317; *Edwards v. Kearzey*, 96 U. S. 595, 600; *McGahey v. Virginia*, 135 U. S. 662, 693; *Barnitz v. Beverly*, 163 U. S. 118, 127; *Oshkosh Waterworks Co. v. Oshkosh*, 187 U. S. 437, 439."

If by section 7-201 of the charter, procedure alone were changed and not substantive rights, it still would

be violative of defendant's rights for the remedy is entirely taken away.

A procedural change abolishing a remedy defendant had when the conduct under scrutiny occurred, viz., February 27, 1948, is an impairment of the contract of employment and prohibited. See Kunze v. Duquesne City, supra.

For the foregoing reasons, the commission's decision denying defendant's appeal from his discharge by the police commissioner is appealable to this court on its merits as well as on jurisdictional and procedural grounds, section 7-201 of the charter to the contrary notwithstanding.

Since we must review the case on its merits, a recitation of the facts is in order. Those facts simply stated are as follows:

Defendant, William J. Connolly, became a member of the Philadelphia Police Department on February 14, 1942, and was a member of the department continuously thereafter until May 12, 1952, when he was discharged by Police Commissioner Thomas J. Gibbons. While so employed, until November 30, 1949, he was assigned to the vice squad under Captain Ellis. He was never subjected to disciplinary action and was the recipient of four commendations for performance of duty during his years of service. On May 12, 1952, Police Commissioner Gibbons dismissed defendant from his employment as a patrolman in the police department, charging him with conduct unbecoming an officer. The specification averred that defendant "received gifts of wearing apparel from one George Tickner, a well known gambler, totaling $75 on February 27, 1948 . . .". The dismissal was on the advice of a special trial board set up by the police commissioner because he "wanted to be fair". Apparently the "trial board" acted on a summary of facts furnished the police commissioner by the district attorney.

That summary pertained to other officers as well as defendant. and the aforesaid "trial board" recommended that all 12 men concerned be separated from the service. The police commissioner followed its recommendation.

The hearing before the "trial board" consisted of a member thereof informing defendant that a grand jury report mentioned him as having received gifts of the value of $75 from one George Tickner and that he was brought there for any explanation he cared to make. Defendant denied receipt of the alleged gift and refused to make any further statement without counsel.

On appeal, the two lay members of the civil service commission conducted the hearing. The law member was not then present, and although he was present at a rehearing, he did not participate in the final denial of the appeal.

The testimony adduced at the hearings before the commission was as follows: A file clerk employed at the Diamond & Co. store, subsequent to the alleged purchase, testified concerning the store's records. She stated that Commissioner Gibbons and a William Carmody examined the store records, selected certain sales slips and ledger cards and photostated them. The witness denied any knowledge concerning the transaction in question. She stated that sales slips were neither made nor signed by the customer, but rather by certain employes. She further testified that store records through March 1948 were destroyed.

William Carmody, a special investigator, testified that he saw a sales slip number 0100 reflecting a sale of a $75 grey suit in February 1948 to William J. Connolly, of 2058 Susquehanna Avenue, Philadelphia, on the corner of which was written "Charge George Tickner". He testified that a charge ledger card for

George Tickner contained among other entries a charge of $75 for a grey suit with the name, "Wm. Connoly." He declined to explain a further similar entry for a $115 suit to a person bearing a name similar to his, L. Carmody. He testified further that although he did not inquire of the salesman, he concluded from the identity of name and address that defendant purchased a suit and charged it to George Tickner. It is to be noted that the spelling of defendant's last name, Connolly, differs from the spelling of the name entered on exhibit 1 as "Connoly", the man who allegedly purchased the grey suit.

Commissioner Gibbons testified that on the recommendation of the district attorney's office and a trial board he set up, he discharged defendant.

Defendant testified that he was on the police force since February 14, 1942, is married and the father of a son and a daughter; that he was never disciplined and has received four citations. He testified that until November 30, 1949, he was a member of the vice squad under Captain Craig Ellis. He denied making any purchase at Diamond & Co., ever being in the store, ever, including February 27, 1948, getting a grey suit there, ever receiving a gift from George Tickner, or authorizing anyone to buy anything or receive presents for him. When asked for an explanation of his name appearing on the sales slip and ledger card, he stated:

"I have thought of many things since before the Grand Jury. The only thing that I can believe and think myself, is that someone else may have used my name and address to purchase something."

At a rehearing Clarence J. Ferguson, lieutenant of detectives, testified that defendant was under his command from March 1942 to November 1949, and was an excellent policeman. Sergeant Charles E. J. Meehan was not permitted to testify as to defendant's character.

Morris Oxman testified that he was practically sales manager of Diamond & Co. during 1948; that he never saw defendant before, never sold him a suit of clothes; recalled selling several persons named Connolly in 1948 including William Connolly, a former chief of county detectives, but that he never sold defendant anything; that he was interrogated three or four times by the investigator as to whether he sold a suit to a William Connolly and charged it to Tickner, but he denied it and could not identify defendant Connolly.

The commission considered the dismissal presumptively legal and the burden to prove otherwise on defendant. It declined to substitute its judgment for the judgment of the police commissioner in administering the affairs of his department, and questioned the necessity of the police commissioner to prove acceptance of the gift beyond doubt. It considered the dismissal just, and denied the appeal.

Thereafter at a rehearing, although the commission cited the annotations of the new city charter for section 7-201, to the effect that "fairness to the employee and to the City requires that all facts . . . be presented . . .", it heard but declined to consider the testimony of the salesman as negating the sale in question.

Although the legislature has clearly manifested its intent that decisions of the civil service commission be reviewed, it has not delineated the scope or the nature of that review. We must construe the statute as best we can in the light of general principles, analogous statutory provisions, the factors inherent in the situation and practical common sense. It seems clear that since the legislature has gone so far as to specifically provide for an appeal by any employe aggrieved by any civil service board or commission it could not have meant such an appeal to be worthless or illusory. Such a result would necessarily follow from an interpretation of the statute requiring the

courts to affirm the commission's findings no matter how unwarranted or how insubstantial the evidence is upon which those findings are based. For the legislature to have created a remedy, which in reality is nothing more than a rubber stamp, is in effect to have created no remedy at all. This interpretation seems not only to be erroneous but impossible. It is fundamental under our system of jurisprudence that the jury is the sole judge of fact, and yet we have provisions for correcting a jury when their action is not warranted by the evidence in the case. The sweeping power to make decisions unsupported by evidence, being so contrary to our ingrained traditions, should not be implied. Having concluded that the decision of the commission must be based on some evidence, it must next be decided how much evidence is required to sustain a finding.

Chief Justice Stern in Philadelphia Civil Service Commission v. Wilson, supra, in referring to the scope of the appeal under the Act of September 29, 1951, at page 586, states:

"It is true that under the statute the appeal is apparently on somewhat broader lines, which would permit the determination of the question as to whether there was *any evidence* to support the Commission's findings." (Italics supplied.)

The Chief Justice went on further to state at page 587:

". . . in any event, the dismissal of Wilson's appeal by the court below must be affirmed even if the Act of Assembly were to be held controlling, for there was obviously *sufficient* testimony to justify the action of the Police Commissioner in dismissing Wilson as well as the decision of the Civil Service Commission affirming that dismissal". (Italics supplied.)

In attempting to ascertain the intent of the legislature without a specific expression of the statute as to the scope of review, it would appear quite proper

to examine how the legislature has provided for the review of the decisions of the administrative agencies of the State.

"The court to which the appeal is taken shall hear the appeal without a jury on the record certified by the agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court." Sec. 44 of the Administrative Agency Law, June 4, 1945, P. L. 1388, 71 PS §1710.44.

Thus the legislature in providing for review from decisions of the many and varied agencies of the Commonwealth has said that findings of fact must be supported by *substantial evidence* and the court on appeal shall determine whether they are so supported. There is no reason for a lesser degree of scrutiny when reviewing civil service boards or commissions.

It may be noted that where the legislature intends that appellate review of an administrative agency shall be limited it will specifically so provide. See Posten Taxi Company v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 13, 17; Act of May 28, 1937, P. L. 1053, sec. 1107, as amended, 66 PS §1437; Lyons Transportation Company v. Pennsylvania Public Utility Commission, 163 Pa. Superior Ct. 335. Even under the statutes which restrict review of the Public Utility Commission to "error of law or lack of evidence" we find the courts not talking about

"any" evidence or "some" evidence to support the findings of the commission but of "sufficient" evidence: Gannon et al. v. Pennsylvania Public Utility Commission, 162 Pa. Superior Ct. 88, 91. Surely no less is required by the instant statute which provides for appeal without restrictions. The Supreme Court has held that:

". . . The courts will not interfere with the exercise of an administrative duty by the officials entrusted therewith unless it is shown that the action taken has been arbitrary, capricious and unreasonable or clearly in violation of positive law." Floersheim Appeal, 348 Pa. 98, 100. Triolo et al. v. Exley et al., 358 Pa. 555, 558.

Surely this indicates very clearly that courts will interfere when the action of administrative officials is arbitrary, capricious, and unreasonable.

A finding unsupported by sufficient evidence is arbitrary, and unreasonable and no court, in a common-law action, would allow a verdict of a jury so based to stand.

". . . since the opinion of Mr. Justice Stone, speaking for the Supreme Court of the United States in *National Labor Relations Board* v. *Columbia Enameling and Stamping Co.*, 306 U. S. 292 (1939) it has been generally recognized by the courts, including this court, that when a statute declares that the findings of fact of an administrative board, if supported by evidence, shall be conclusive, it means evidence that is substantial—that is, evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. As was said by Mr. Justice Stone, 'Substantial evidence is more than a scintilla and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion', *Consolidated Edison*

*Co. v. National Labor Relations Board,* supra, (305 U. S. 197), p. 229, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury": Wilbert v. Commonwealth of Pennsylvania Second Injury Reserve Account et al., 143 Pa. Superior Ct. 37, 49.

Moreover, the "substantial evidence" rule is applied to decisions of the Civil Service Commission of Pennsylvania. In State Civil Service Commission v. Snyderman, 362 Pa. 422, 424, Mr. Justice Stearne in speaking for the court said:

"This Court must affirm the order of the court below unless it appears from the record that the adjudication of the Civil Service Commission is not supported by *substantial evidence* or that constitutional rights of the appellant have been violated: Sec. 44 of the Administrative Agency Law, June 4, 1945, P. L. 1388, 71 P. S. 1710.44."

In Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398, 400-01, Mr. Justice Horace Stern, speaking for the court, defined "substantial and legally credible evidence", as follows:

"All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': *Consolidated Edison Co. v. National Labor Relations Board,* 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be estab-

lished': *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': *National Labor Relations Board v. Thompson Products, Inc.*, 97 Fed. 2d 13, 15; *National Labor Relations Board v. Union Pacific Stages, Inc.*, 99 Fed. 2d 153, 177; 'Suspicion may have its place, but certainly it ·cannot be substituted for evidence': *Union Trust Co. of Pittsburgh's Petition*, 342 Pa. 456, 464, 20 A. 2d 779, 782."

See also Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129, 133.

As to the quantum of evidence required to satisfy the substantial test the following is pertinent.

"The companies contend that the Court of Appeals misconceived its power to review the findings and, instead of searching the record to see if they were sustained by 'substantial' evidence, merely considered whether the record was 'wholly barren of evidence' to support them. We agree that the statute, in providing that 'the findings of the Board as to the facts, if supported by evidence, shall be conclusive,' means supported by substantial evidence: *Washington V. & M. Coach Co. v. National Labor Relations Board*, 301 U. S. 142, 147. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion: *Appalachian Electric Power Co. v. National Labor Relations Board*, 93 F. 2d 985, 989; *National Labor Relations Board v. Thompson Products*, 97 F. 2d 13, 15; *Ballston-Stillwater Co. v. National Labor Relations Board*, 98 F. 2d 758, 760. We do not think that the Court of Appeals intended to apply a different test. In saying that the record was not 'wholly barren of evidence' to sustain the finding of discrimination, we think that the court referred

to substantial evidence. *Ballston-Stillwater Co. v. National Labor Relations Board,* supra." Consolidated Edison Co. et al. v. National Labor Relations Board, et al., 305 U. S. 197, 229.

Turning to the Philadelphia City Charter we find that defendant's dismissal can be sustained only if it were for just cause. The police commissioner's power to discharge is so limited in section 7-303 of the Philadelphia Home Rule Charter nor is this limitation an innovation with the city charter. Legislation since 1885 has regulated the discharge of policemen. (See Act of June 1, 1885, P. L. 37, known as the Bullitt Bill).

In paragraph 5 of the annotations, section 7-201 of the City Charter, it is stated:

"If the Commission has jurisdiction and the procedure upon appeal meets the requirements of due process and of the Charter, the Commission's action whatever it may be, provided it conforms to the Charter, is determinative of the case, and is final. There may be no further appeal in any event on the merits of the case."

It is difficult to see how it can be determined whether the commission's action "conforms to the charter", i.e., the dismissal was for just cause only, unless the evidence is reviewed. This review cannot be perfunctory or so drastically limited as to be in effect no review at all, for a consequence would be the sanctioning of arbitrary and illegal action, manifestly not intended.

It is to be noted that most of the decisions under prior civil service laws were in mandamus proceedings. Such a proceeding is different from an appeal in that it seeks *to compel* a person or body clothed with judicial, deliberative or discretionary powers to revise or modify a decision resulting from the exercise of such discretion. See Souder v. Philadelphia et al., 305 Pa. 1, 8; also Raffel v. Pittsburgh et al., 340 Pa.

243, 246, and Wagner v. Pittsburgh et al., 352 Pa. 647, 649.

In mandamus proceedings, involving a review of the record only, the court of common pleas was limited to a determination of whether there was substantial evidence and ascertaining that there had been no abuse of discretion by the commission, (see Gartland v. City of Philadelphia et al., 70 D. & C. 161, 163) but the review on appeal is broader.

Although what is just cause is a discretionary matter with the commission, the commission may not act without presentment of substantial evidence.

The court, in the Gartland case, supra, stated at page 164:

"Thus the only question before this court is whether the commission has abused the discretion which has been granted to it. A definition of discretion by an administrative body was given by the late Judge Audenreid in The Lubin Manufacturing Company's Appeal, 25 Dist. R. 578, 579 (1916), and it has been adopted in 18 C. J. 1134-1135, and by the late Judge Patterson speaking for the Court of Common Pleas No. 1 in L. J. Selznick Productions, Inc. v. Pennsylvania State Board of Censors, 26 Dist. R. 423 (1917) and by the late Judge Thompson speaking for the Orphans' Court of Philadelphia County in James' Estate, 9 D. & C. 639 (1927).

" 'By discretion is meant the power to discriminate and determine what, under existing circumstances, is right and proper. The lawful exercise of discretion involves a fair consideration of all peculiar features of the particular question to the disposition of which it is to be applied. It excludes not only the play of fancy or caprice, but also servile adherence to a hard and fast general rule'."

In examining this case to determine whether the civil service commission has abused its discretion we

are reminded of the meaningful words of Mr. Justice Douglas, dissenting in United States v. Wunderlich et al., 342 U. S. 98, 101:

"Law has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official, some bureaucrat. Where discretion is absolute, man has always suffered. At times it has been his property that has been invaded; at times, his privacy; at times, his liberty of movement; at times, his freedom of thought; at times, his life. Absolute discretion is a ruthless master. It is more destructive of freedom than any of man's other inventions."

In the case at bar, the commission had no proof, substantial or otherwise, that defendant received the garment in question. Defendant's name and address appeared on the store records, and that is the only connection between defendant and the garment. We cannot believe that a police officer, who would lower himself and his uniform as defendant was accused of having done, would so naively give his true name and address. Yet the commission's findings rest on that single circumstance.

It was an abuse of discretion not to consider the testimony of Morris Oxman, the salesman involved, to the effect that he did not sell the garment to defendant. It was an abuse of discretion to decline to consider the case on the merits and to affirm the commissioner simply on the ground that he is doing a good job and that the commission felt it should not substitute its judgment for the commissioner's judgment.

Even had the commission considered the evidence proffered and reviewed the case on its merits, it would have been an abuse of discretion to have sustained the commissioner's finding, for there did not exist sufficient substantive evidence necessary to support such a finding.

In Gartland v. City of Philadelphia et al., supra, proof that an officer, disciplined three times in 12 years, joined a felon for a cup of coffee, and accepted a ride from him, was not considered proof of consorting with a known criminal. The officer's discharge was determined to be an abuse of discretion and he was ordered reinstated.

In Souder v. Philadelphia et al., 305 Pa. 1, the evidence was sufficient to sustain dismissal. There a captain of police when required to explain the source of bank balances several times in excess of his annual salary refused to do so. His answer to the grand jury confirmed his complicity in crime. To his superior he refused any answer. This was considered cause for discharge.

The specifications in both the Gartland and Souder cases were serious enough to warrant dismissal if proven. In the one instance, the charge was not proven without resort to conjecture, surmise, and imagination. These are no proper substitutes for evidence and the officer in question was reinstated. In the other instance the charge was proven by substantial evidence and the officer concerned was denied reinstatement.

The evidence introduced at the hearing and rehearing in the present proceeding did not prove a sale of a grey suit by Morris Oxman or anyone else to defendant Connolly. In fact, it negated any such sale for Morris Oxman testified that he did not sell defendant any suit.

Analyzing the evidence further, assuming an action for the price of the suit by Diamond & Co. against defendant on the basis thereof, we would be required to direct a verdict for defendant. Further in any action by Diamond & Co. against George Tickner for the price of the suit on the basis of said testimony, we would be required to direct a verdict for defendant.

Also in a trial of George Tickner for appropriate crime by reason thereof, we would be required to direct a verdict of acquittal.

The evidence offered is legal proof of nothing. The grand jury did not indict on it; the district attorney did not prosecute on it; Diamond & Co. did not sue on it. It has no more probative value before the civil service commission than before others. It does not prove that defendant purchased the suit in question and charged it to George Tickner.

The most that can be said for the evidence submitted is that the district attorney *suspected* such a transaction and brought it to the police commissioner's attention.

A police officer must be protected and his position preserved against unfounded attack. No officer should be dismissed from service unless it is for *just cause*, not only charged but proven by substantial evidence. His position cannot be jeopardized by mere suspicious circumstances.

This court strongly believes that every member of the police force must be loyal and honest and dedicated to the enforcement of law and order. We are desirous of supporting the police commissioner to the fullest extent in his duty to provide the finest possible police protection for our citizens within the framework of the Home Rule Charter and the laws of Pennsylvania.

However, we are deeply impressed by the words of Chief Justice Kephart in McCoach v. Philadelphia, 273 Pa. 317, 330, although in a dissenting opinion for other reasons, wherein he characterized dismissal of a police officer as follows:

"It is a serious matter for a man to be removed . . . It involves many important considerations, and, because of the high character of an officer,—his long term of service, . . . making him a valuable public

servant—merits a dignified treatment at the hands of those in authority, as the office is a responsible one."

Were suspicion alone sufficient cause to warrant the dismissal of a police officer, as we are urged to approve in this case, the efficiency of the department and the security of every one of its officers in their respective positions would be jeopardized.

If we sustained the dismissal in the instant case it would create a precedent which might enable evilly disposed persons to deliberately involve good police officers in similar situations without their knowledge and cause their removal from the force.

Let us analyze the basis for dismissal of defendant from a slightly different approach. What was there to prevent George Tickner from sending a crony of his to Diamond & Co. with instructions to select a garment, identify himself as William Connolly, the police officer, and further implicate that police officer by giving an appropriate residential address and charging the same to George Tickner's account. Absolutely nothing. We suggest that the sworn disavowal of a police officer of long standing on the police force with numerous commendations for meritorious service and excellent reputation as testified to by former commanding officers, should carry equally great if not greater weight than that of an unproven sale. Conceivably the police commissioner himself might be the victim of such an indefinite standard of proof years hence. How could and would he disprove such a sale and purchase if it were attributed to him other than to disavow it as defendant did?

It would appear that neither the police commissioner nor the civil service commission was willing to assume fully the responsibility attendant upon them in this case. The police commissioner referred the matter to a "trial board" in what he termed "in the interests of fairness". He adopted its recommendations as it

applied to a group of officers. The civil service commission in turn adopted the police commissioner's finding, subsequently stating that it did not want to substitute its judgment for that of the commissioner. Thus the commission adopted the "trial board's" recommendation not because it was convinced of the proof of the charges presented but rather because of the expressed confidence in the manner in which the police commissioner has conducted his office.

It seems to us that fairness requires that defendant be protected against dismissal in the manner above described based upon what could be the machinations of suspicion. In our opinion the morale of the police force would be considerably enhanced with the assurance that its members' positions would be protected from possible attacks years hence based on unproven suspicion. With such confidence they could and would face and perform their duties fearlessly and effectively. This could not be so if their every act were performed with a reservation whether by so acting they might be implicated even remotely by suspicion. With full knowledge that their careers would be protected fully against every improper factor, that their careers could only be endangered by their own improper conduct, their actions would be motivated by their own best interests which would then be synonymous with the best interests of the city and its citizens.

After considering the matter carefully and at great length we conclude that the evidence is insufficient to support the findings of the majority of the Philadelphia Civil Service Commission, and that the action of the majority constitutes an abuse of discretion.

The appeal is sustained and defendant is reinstated to his status as a patrolman with the Department of Police, City of Philadelphia.