## Johnston Appeal.

Argued April 9, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*John Duggan, Jr.*, with him *Charles J. Maloney*, for appellants.

*Louis Rosenberg*, Assistant City Solicitor, with him *J. Frank McKenna, Jr.*, City Solicitor, for appellees.

OPINION BY WRIGHT, J., July 17, 1956:

Raymond W. Johnston was employed as a cashier in, and eventually as supervisor of, the per capita tax division in the office of the Treasurer of the City of Pittsburgh. Lida O'Leary was employed in the same division as a clerk. There were six employes in all, a supervisor (Johnston), four cashiers, and a clerk (O'Leary). The office of the division has two receiving windows at which the cashiers work in turns. The

supervisor assigns a cash box and an identification die or cashier's stamp to each of the cashiers. The cash boxes have different numbers and the corresponding die or stamp carries the same number. Each day's collections are balanced with the duplicates of the receipts issued, and each cashier is responsible for the money collected by him and for his cash box and die. The clerk's duty was to process checks received in the mail, and she was given an identification stamp of her own. In November 1952, it appeared that certain losses had occurred in the per capita tax division. These losses became evident when delinquent notices were brought into the office with evidence of payments having been made, for which no duplicate receipts were found. Investigations were conducted by the City Treasurer, District Attorney, and representatives of the bonding company. The accumulated loss was disclosed to be over $5,000.00. While these investigations failed to establish the individual criminal responsibility of any of the employes, all six were suspended. The four cashiers were subsequently reinstated. Johnston and O'Leary were dismissed as of May 19, 1953. They appealed to the Civil Service Commission which heard considerable testimony, made findings of fact and conclusions of law, and sustained the decision of the City Treasurer in each case. Appeals were then taken to the Court of Common Pleas. After argument before the court en banc, the appeals were dismissed, and these appeals to the Superior Court followed.

At the oral argument we raised the question of our jurisdiction, and the parties agreed that the appeals should be heard and decided by the Superior Court. While the appeals are separate, they arise out of the same general factual situation, involve the testimony of the same witnesses, raise identical questions, and

were argued together. We will therefore write but one opinion.

In its decision in the *Johnston* case, the Civil Service Commission found, inter alia, that it was Johnston's duty and responsibility to direct and control the work of the four cashiers and the clerk under his supervision; that, at the time of his appointment as supervisor, he was specifically instructed by the City Treasurer "that it was his responsibility to see that every one in his division was to do his own work in a proper manner"; that he nevertheless permitted Mrs. O'Leary "to receive per capita tax payments at the cashier's windows, to use the stamps of the cashiers and to sign their names or initials on receipts issued by her where said cashiers were temporarily absent"; that, when a cashier was temporarily absent from his assigned window, Johnston permitted another cashier to "receive payments at the absentee's window, use said absentee's cash box and stamp, and issue receipts bearing his name or initials"; and that Johnston himself "on occasions used the cash boxes and stamps of temporarily absent cashiers". Concluding that Johnston "was careless, negligent and inefficient in the performance of his known duty when he permitted on various occasions, the indiscriminate practice" detailed above; that he knew that confusion would result therefrom and that the practice in question "clearly militated against efficient operation of the Division and placed obstacles in the way of establishing responsibility", the Civil Service Commission held that the charge of inefficiency was sustained by the testimony and approved the action of the City Treasurer in dismissing Johnston from his position.

In its decision in the O'Leary case the Civil Service Commission found, inter alia, that, when Johnston became supervisor, he definitely instructed Mrs. O'Leary

that each person was to do his own work, "and that no one other than the regularly assigned cashiers was to accept any money at the windows"; that, notwithstanding these specific instructions and even after having been "scolded" by the supervisor for not following his directions, and with full knowledge that each cashier was held responsible for the money in his cash box and drawer, Mrs. O'Leary "continued to work at the windows and to sign the names of the various cashiers and to use their cash boxes and stamps when said cashiers were temporarily absent". Concluding that Mrs. O'Leary "showed a careless disregard for the proper conduct of the affairs" of the office and of her obligations and duties, "and contributed to the confusion and the present inability" to determine responsibility for the shortage, the Civil Service Commission, as in the *Johnston* case, held that the evidence justified the action of the City Treasurer in dismissing Mrs. O'Leary from her position.

Appellants contend that the lower court improperly limited the scope of its review. They assert that it was the duty of the Court of Common Pleas to "examine the record *de novo* . . . and the rule in force and effect prior to the passage of the Act of 1951 that decisions of the Civil Service Commission may be reversed only upon proof of a clear abuse of discretion no longer applies".

The Act of September 29, 1951, P. L. 1654, 53 PS 304, provides: "All decisions of the civil service board or commission in any city shall be subject to appeal to the court of common pleas or the county court of the county in which the city is located". In *Civil Service Commission of Philadelphia v. Wilson*, 373 Pa. 583, 96 A. 2d 863, Mr. Chief Justice STERN stated: "It is obvious that, on appeals from the Civil Service Commis-

sion, Courts of Common Pleas in Philadelphia are invested, both under the Charter and the Act of Assembly, with some measure of review, since under either they may inquire into the jurisdiction of the Commission and the regularity of the proceedings there conducted. It is true that under the statute the appeal is apparently on somewhat broader lines, which would permit the determination of the question as to whether there was any evidence to support the Commission's findings. The question therefore is not whether the Courts of Common Pleas of Philadelphia County have jurisdiction of appeals from the Civil Service Commission, but what is the *extent or scope* of their authority to review the Commission's findings. In the present instance it is obviously unnecessary to determine that question since, in any event, the dismissal of Wilson's appeal by the court below must be affirmed even if the Act of Assembly were to be held controlling, for there was obviously sufficient testimony to justify the action of the Police Commissioner in dismissing Wilson as well as the decision of the Civil Service Commission affirming that dismissal".

In the recent decision in *Addison Case,* 385 Pa. 48, 122 A. 2d 272, the question posed in the *Wilson* case was squarely presented, and it was held that the Act of 1951 did not supersede the limitation upon court review imposed by the Philadelphia Home Rule Charter. Of importance to the cases at bar is the following statement of Mr. Justice JONES: "A secondary question then followed[1] *as to whether the evidence adduced at the hearing before the Civil Service Commission was sufficient to warrant the employee's dismissal"* (italics supplied). It therefore appears that, under the Act of

---

[1] In the lower court, since it had there been erroneously held that the general statute was paramount.

454

1951, the duty of the Court of Common Pleas, on appeal, is to determine whether there is sufficient evidence to support the findings of the Commission. We are satisfied that this function was actually performed by the lower court in the cases at bar.[2]

Appellants complain that they were dismissed "under a blanket charge", and that they requested, but were not furnished, additional information in order to properly make answer. The dismissal of employes in the classified civil service of any city of the second class is governed by Section 20 of the Act of May 23, 1907, P. L. 206, 53 PS 9383, the pertinent portion of which reads as follows: "No officer, clerk, or employe, in the competitive class or in the non-competitive class of the classified civil service of any city of the second class, who shall have been appointed under the provisions of this act, or of the rules made pursuant thereto, shall be removed, discharged, or reduced in pay or position except for just cause, which shall not be religious or political. Further, no such officer, clerk, or employe shall be removed, discharged, or reduced, except as provided in section eight of this act, until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction a copy of the statement of reasons therefor, and of the written answer thereto, shall be furnished to the civil service commission, and entered upon its records".

---

[2] Speaking for the court en banc, the late Judge COLUMBUS said: "Mindful of the limited authority possessed by the court in this matter, we have carefully read, examined and weighed the entire record in this case, and have concluded that there is sufficient evidence to justify the action of the Civil Service Commission in sustaining the action of the Treasurer".

Statements of the reasons for the action of the City Treasurer were set forth in his letters to appellants dated May 12, 1953.[3] Taking the position that appellants' replies were not satisfactory, the City Treasurer wrote letters of dismissal. It must be remembered that appellants were aware of the situation which had existed in the office of the per capita tax division from November 1952. Investigations had been conducted, and the employes had been examined both separately and together. The actions of appellants had been subjected to scrutiny, particularly with regard to the manner in which work in the cashiers' cages was handled. They certainly were not ignorant of the basis for the charges of inefficiency and "careless disregard in the conduct of the affairs, obligations and duties" of their positions. The notice required by the Act need not be drawn with the certainty of a bill of indictment: *Schellenberger v. Warburton*, 279 Pa. 577, 124 A. 189. And see *Caldwell v. Fairley*, 363 Pa. 213, 69 A. 2d 135. We have concluded that appellants were sufficiently informed of the nature of the charges against them, and that they were not deprived of any rights under the statute.

---

[3] (Johnston) "You are hereby charged with inefficiency in the supervising of the work of those employees under your charge in this department and also with such careless disregard in the conduct of the affairs, obligations and duties of your position as to become involved in a shortage or loss of public funds during the past months".

(O'Leary) "You are hereby charged with such careless disregard in the conduct of the affairs, obligations and duties of your position and especially in the handling of money in this department as to become involved in a shortage or loss of funds during the past months. And further you are charged with failure to cooperate with me and all other persons properly attempting to inquire or determine the cause of the shortage or loss of funds".

Appellants further contend that "no evidence whatever" was produced to establish just cause for their dismissal. It is clear that the action of the City Treasurer in the case at bar was not based upon political or religious reasons. Rather there was, in the words of counsel for appellee, "a highly embarrassing situation caused in the division . . . and while the finger of suspicion could not have been definitely pointed at anyone for something worse than gross negligence, it was, nevertheless, and indubitably, a case where either gross negligence or even worse occurred. Perhaps all of the employees in this division should have been removed, but that is not the question before the court, nor was it the question before the Civil Service Commission". In order not to further prolong this opinion, we will simply state that our independent examination of the notes of testimony has convinced us that there was sufficient evidence to support the findings and conclusions of the Commission.

The orders of the lower court are affirmed.