**Mautz v. Philadelphia**

*Lemuel B. Schofield* and *Marvin Comisky*, for plaintiffs.

*Abraham L. Freedman*, City Solicitor; *Richard H. Markowitz*, Assistant City Solicitor, and *Jerome J. Shestack*, First Deputy City Solicitor, for defendants.

CARROLL, J., October 22, 1956.—In this equity action, plaintiffs, who now hold the rank of police sergeant, seek to compel the police department to give them the permanent rank and status of lieutenant of police as that position has been defined in the classification plan adopted by the personnel department on January 1, 1953.

The gravamen of the complaint is found in those allegations of plaintiffs charging the city with bad faith in instituting the new classification plan. Plaintiffs contend that there is really no difference between their prior rank of house sergeant and the newly created rank of lieutenant. They allege further that the Home Rule Charter protects them in their tenure and that the examinations they failed to pass for the new post are not dispositive of their rights since the city has failed to create a bona fide reclassification plan.

Plaintiffs contend that this alleged failure entitles them to promotion to the new rank of lieutenant with-

out examination because the duties of the new office are almost identical with plaintiffs' accustomed duties as house sergeants under their prior status. Thus they conclude that irrespective of what title may be given to the job, they are entitled to all the emoluments which accrue to any post calling for the same duties and responsibilities they are now charged with.

The city filed an answer and new matter to this complaint raising two principal defenses: First, they contend that the reclassification plan is bona fide and creates a wholly different rank from that of house sergeant; second, they contend that the court has no jurisdiction over this matter since the civil service commission has the authority to make final decision; coupled with this defense, they raise the question of laches because plaintiffs permitted a year to pass before filing this complaint. The litigation was started in December of 1953 and, after initial hearings by the court, counsel for plaintiff and the city solicitor agreed that the matter would be remanded to the civil service commission, since that body's first decision was not based upon a complete record.

Shortly thereafter, with the approval of the court, the parties entered into a stipulation of record providing in essence as follows: (1) The city would not make any more appointments of police lieutenants other than the 100 who had been certified at the time until disposition of the instant litigation; (2) the city would continue 21 of plaintiffs in the position of provisional police lieutenants with the right to receive the compensation and increments attaching thereto; (3) the remainder of plaintiffs were to be placed in the permanent position of sergeants with the proviso that should they prevail in this litigation, they would be reinstated immediately to the rank of lieutenant without loss of compensation, seniority or other benefits.

On July 1, 1954, pursuant to a conference held with the city solicitor and counsel for plaintiffs, this stipulation, which was in effect a consent decree, was modified as follows: (1) All of plaintiffs for salary purposes were to be treated as provisional lieutenants until the termination of the litigation and were to enjoy that rank also for the additional purpose of compensation, seniority rights and eligibility to take civil service examinations; (2) the commissioner was given the right to assign plaintiffs to such duties, titles and tasks as he might administratively determine, provided that such tasks were in conformity with their present permanent civil service status as sergeant; (3) the city was given the right to make appointments from the original list to the rank of lieutenant as vacancies occurred.

Thereafter, pursuant to a third stipulation of counsel approved by the court on February 14, 1955, the matter was remanded to the civil service commission for redetermination of those issues which are the province of that body. The commissioners on May 6, 1955, rendered their opinion O-43 in which they held that appellants, i. e., plaintiffs, were not entitled to civil service status as police lieutenants and instructed the personnel director to proceed to audit the jobs of police lieutenant and police sergeant to determine whether or not a new classification should be created or whether the duties now handled by police sergeants should be allocated to police lieutenants. On June 8, 1955, certiorari was granted and pursuant to the stipulation of counsel the matter was once more before the court for a determination of the legal issues which were still unresolved. On August 15, 1955, a fifth stipulation of counsel was approved by the court which provided that all wages paid to plaintiffs through and including January 27, 1955, were not to be subject of further action.

On March 21, 1956, a modified injunction was granted to be continued in force until final decision. This decree provided as follows: (1) Until final determination, all plaintiffs still in service were to continue to receive the salary of provisional lieutenants; (2) status of all plaintiffs still in service for pensions, seniority and examination rights was to continue as that of provisional lieutenants; (3) the police commissioner was to be free to assign plaintiffs to duties consonant with their permanent status of sergeants; (4) the city was permitted to continue to appoint lieutenants from the eligible list as vacancies occur; (5) plaintiffs were to receive all benefits retroactively which would accrue to them as lieutenants, if they prevailed in the case.

Thereafter hearings were held by the court and extensive testimony was taken about the actual tasks performed by lieutenants under the classification as contrasted with the duties of the former house sergeants, the rank enjoyed by plaintiffs.

The starting point is, of course, the civil service commission's revised findings and opinion as a result of its hearings after we remanded the case to it. Hence a review of that opinion is an essential prelude to our own findings of fact and conclusions of law.

An analysis of the civil service commission's revised opinion establishes the following bases for the commission's conclusion that the classification of police lieutenant is substantially different in theory and practice from the classification of house sergeant enjoyed by appellants prior to the reclassification plan of January 1, 1953.

First: The house sergeant was "to act as commanding officer in the absence of the Captain at the police station". The commission continued that this job was to be contrasted with that of street sergeant. Those

occupying the latter position were "to act as commanding officer in the absence of the Captain". These specifications were prepared in October 1930, by J. L. Jacobs & Co., of Chicago, Ill., who were professional management engineers. A subsequent survey conducted by the Pennsylvania Economy League for City Council in 1943 did not result in an alteration of this description and the original classification of the Jacobs Company was the technically accurate description for the job.

Thus, the commission concluded that the concept of house sergeant was that of communications officer on the captain's staff and as such the house sergeant acted as though he were commander if the captain were temporarily called from the station house. Under the prior system, captains were theoretically on 24-hour duty, although as a matter of fact they were not at the station during the 24-hour period; when they went off duty, the house sergeant was the man in charge. The distinction between that post and street sergeant was that if the captain went off duty by temporary transfer, vacation, leave, i. e., for any period longer than the temporary absence during the working day, the house sergeant was the man who became district commander.

The commission found that the old classification plan was not really maintained from 1943 down to January 1, 1953, the date of the reclassification which is the subject of the instant litigation. The practice was for the house sergeant OR street sergeant to take over the captain's command when he was away from the station house. The captain designated which of the two he wanted and, in effect, the one he designated served as acting captain with complete command responsibility and the freedom of action incident thereto. The commission found as a fact that during this 10-year period the house sergeant or street sergeant so se-

lected was actually designated acting captain. Moreover, the commission also found that if the house sergeant acted as captain during the temporary absence of a commanding officer while the captain was on duty, the house sergeant cleared with the captain before making any nonroutine decisions, although there was considerable difficulty in determining whether a matter was routine or extraordinary. A house sergeant, however, could not leave the station house without the captain's permission or permission of headquarters.

The commission found that when the house sergeant acted with command authority, he acted as a designee of and on behalf of the captain. He acted independently and on his own behalf only if he were designated acting captain to serve while the captain was off duty.

Second: The commission then contrasted this practice with the situation since January 1, 1953. The commission states that the captain now is on an eight-hour shift so that 16 hours of each day he is off duty. During these 16 hours as well as when the captain is on vacation or temporary transfer, the police lieutenant on the shift is, by virtue of his office, in full, independent command of the district and the captain cannot deprive him of that function by delegating it to someone else.

The commission states that the testimony showed no substantial dispute as to this practice currently in force.

Third: An analysis of the job specifications for police lieutenant reveals that many of the clerical and administrative duties previously performed by the house sergeant are now found in the job specification for police lieutenant. The commission states that if the lieutenant adequately performs his command function, he will not have time to perform the clerical and administrative acts formerly performed by the house sergeants.

This seems rather anomalous, for the opinion, in effect, states that the lieutenant who is required under the job specification to do certain things cannot in fact be expected to do them.

Thus, they conclude that while the specifications and operating orders of the old job of house sergeant and the new one of lieutenant contain identical language, the concept is substantially different.

Fourth: The commission further found that in some districts lieutenants under the new classification are not performing their command functions. It then goes on to state that this does not impeach the validity of the job specification.

Fifth: The commission found that the old examination for house sergeant was devoid of material which was relevant to a determination of whether or not the candidates had any talent for supervision or administration, both of which are part of a command position. The gist of this point is that the lieutenants who automatically have command in the captain's absence are of a distinct class because their examinations contain material designed to test ability to take command. The other distinction is the fact that under the old system the captain could designate house sergeants or street sergeants, whereas now the police lieutenant automatically gets the post.*

---

* It would seem that the material in an examination is certainly a weak factor in an attempt to distinguish one job classification from another. The crucial factor is what is contained in the specification and also what in fact has actually occurred. While it is true that previously the captain could designate whom he wanted at his whim to take command, as a practical matter the commission states that the testimony indicated that the house sergeants for all intents and purposes were commanding officers in the captain's absence. The commission further states that the job specification of the old house sergeant position and lieutenant position are similar in many material respects.

The commission nevertheless concluded that the lieutenant position is a valid one and not substantially identical with that of house sergeant. This conclusion, however, is qualified by two crucial questions which they direct the classification and pay division of the personnel department to answer.

1. Do all persons holding the title police lieutenant actually perform the duties of the position as classified under the job specification?

2. Are the men who were formerly house sergeants still performing the same clerical duties they performed under the new plan that they performed previously?

Despite its inability to answer two basic questions which it would seem go to the very heart of the matter, the commission found as a fact on the basis of extensive testimony and evidence before it that there is a difference in classification and held that plaintiffs are not entitled to the rank of lieutenant but only to the rank of sergeant.

On the basis of all of the pleadings, the admissions, the record before the civil service commission and testimony before us we make the following

*Findings of Fact*

1. Plaintiffs are William P. Mautz, Theodore Lefkowitz, Robert Williamson, John Kenny, James Bussillo, Amer Green, Stephen Kolumbus, James Vena, James Hudson, Andrew Proto, George White, Walter Wajda, Basil Bailey, Francis Walsh, James Burns, Thomas Dean, Joseph Bowen, Howard Getman, Edward O'Malley, Kasimir Dubeck, George Shiffner, Edwin Johnson, Anthony Ford, Francis Delaney, Martin Walsh, Spencer Hall, Samuel Rodia, Fred Etling, Gregory Laszlo, Clarence Drennan, Edward J. McGurk.

2. Defendants are the City of Philadelphia, Joseph S. Clark, Jr., Mayor; Robert K. Sawyer, Managing Di-

rector; Frank J. Escobedo, Personnel Director, and Thomas J. Gibbons, Commissioner of Police.

3. On April 17, 1951, plaintiffs were duly qualified members of the police force of Philadelphia who were certified after proper competitive examination as house sergeants.

4. Under a classification plan promulgated by the personnel department and which became effective January 1, 1953, the position of house sergeant was abolished; the plan contained two new classifications of police sergeant and police lieutenant.

5. On July 11, 1953, competitive examinations were taken by plaintiffs for the position of police lieutenant; plaintiffs failed the examination and were so notified by the personnel department.

6. Under the new classification plan, plaintiffs became permanent sergeants instead of provisional lieutenants, in which rank they have been serving since they failed to pass the examination.

7. The duties of the former position of house sergeant as defined by the civil service commission in 1951 were as follows:

"Duties. Under the direction of a Police Captain, to be responsible for the police and clerical work in a police station; to assist in keeping the records of police district activities and in making periodic reports; to receive hourly reports from, and keep in touch with, Patrolmen and street sergeants engaged on patrol duties; to receive and send police messages; to see that the electrical equipment in the police station is kept in working order; to read messages to patrols before they go out on street duty; to act as commanding officer in the absence of the Captain at the police stations; to be responsible for all prisoners in the police station; and to perform related work as required."

8. The classification plan of January 1, 1953, set forth the following definition of the rank of police lieutenant:

"This is responsible supervisory police work involving the command of an assigned shift in a police unit.

"Work involves responsibility for instructing and leading police officers in their work, for assigning them duties and checking their efficiency. Work may involve responsibility for the supervision of special units, such as assigned shift of the traffic division or a squad of policemen on detective duty. Considerable judgment must be exercised independently in interpreting orders; and in making decisions concerning important police problems when no superior officer is readily available. Work is performed within the general framework of established routine and departmental rules and regulations, with changes in routine and assistance on major problems received from a superior officer. All work is subject to general supervision by personal inspection, review of reports by superiors, and appraisal of the effectiveness of police work performed by the assigned squad or detail."

9. The civil service commission has determined such reclassification was necessary and in opinion O-43 of May 6, 1955, has found that the position of police lieutenant was a new classification distinct and apart from that of house sergeant in the plan of 1951.

10. The civil service commission made its determination on the basis of credible evidence although it was contradicted.

11. Sufficient credible evidence, although contradicted, was presented to the court to sustain the commission's finding that the rank of lieutenant under the classification plan of January 1, 1953, is a distinct and different rank from that of house sergeant under the classification plan of 1951 and that the reclassification

was not a subterfuge but a real reclassification within the scope of discretion of the administrative authorities.

12. The disparity between practice and classification does not render the reclassification a nullity, since the evidence does not justify the court in declaring the reclassification null and void because it was perpetrated as a fraud on plaintiffs and as a scheme to deprive them of their rights.

13. The evidence presented does not establish facts sufficient to justify the court's intervening in a matter solely within the discretion of the executive and administrative branch of the municipal government.

*Discussion*

This litigation is another of the series of cases which arose in the early days of the administration of the Philadelphia Home Rule Charter adopted by the electors on April 17, 1951.

The crux of the case is the bona fides of a partial reorganization of the police department under a classification plan which was promulgated by the personnel department and went into operation on January 1, 1953. Under that plan the former positions of house sergeant and street sergeant defined by the civil service commission in 1951 were abolished and a new rank of lieutenant of police was created. The district command was altered in that the prior table of organization which provided for a captain, a house sergeant and a street sergeant at each station house was modified to provide for a captain, a lieutenant and one sergeant.

Plaintiffs contend that the reorganization was not a real reclassification but merely a subterfuge to bypass plaintiffs and prevent them from receiving the emoluments and benefits incident to the newly created

rank which, they assert, has not materially changed any of the duties and responsibilities that they now have and perform as house sergeants. In essence they rely upon the case of Ferguson v. City of Philadelphia, 86 D. & C. 87 (1951), in which President Judge Mac-Neille held that an attempted reclassification in that case was merely a device to thwart plaintiff and to bypass him. The allegations in the instant complaint are markedly similar with respect to the legal conclusions plaintiffs urge and for that reason plaintiffs contend that the court has jurisdiction since equity is their only recourse.

The rôle of the courts in civil service matters has been redefined by the Supreme Court in the cases of Addison v. Philadelphia, 385 Pa. 48 (1956), and Whisted v. Philadelphia, 385 Pa. 213 (1956). In both cases the Supreme Court has held that the civil service commission is the final determinant of all matters of fact regarding administrative matters under their authority and that the scope of judicial review can only go to the regularity of proceedings and to questions touching on due process and fraud. It suffices to say that the allegations of plaintiffs and the proof they submitted were sufficient to bring the matter within this court's jurisdiction since if, as they allege, the reclassification plan were a subterfuge and a device to deny plaintiffs the benefits and emoluments of the new rank, this court would have jurisdiction to correct such a situation. See Ferguson v. City of Philadelphia, supra, and cases therein cited.

Nevertheless, apart from the question of fraud, the scope of our review has been sharply limited by the Supreme Court in the Addison and Whisted cases and accordingly we are bound by those precedents which will not permit us to reëxamine any findings of fact that a civil service commission has made, no matter

how erroneous, as long as there has been due process and an absence of fraud.

Applying these criteria, we conclude that the decision of the civil service commission must be affirmed and that the complaint accordingly must be dismissed and the relief sought denied. It is clear that the proceedings before the commission accorded the participants due process. Although plaintiffs have produced considerable testimony to indicate the confusion existing in the promulgation of the reclassification plan and its execution, nevertheless we cannot say as a matter of law that the decision of the commission is tainted with fraud.

Perhaps the most accurate characterization of the mismanagement of the whole issue which caused this unfortunate litigation is found in the brief of the city solicitor:

"Despite the failure of the police department to effectuate a smooth transfer of functions and changeover in duties and responsibilities, and despite the failure of the personnel department to enforce the terms of its classification, if these factors existed, neverthless this administrative failure cannot, and does not, destroy the basic validity of the classification and its essential distinction from the position of house sergeant."

We believe that this fairly sums up both the factual situation which existed and a correct statement of the law. There is very little doubt that the civil service commission's first order and opinion were both inadequate and unenforced. Indeed, the city with candor agreed that the matter should be remanded to the civil service commission for further determination based upon substantial evidence and careful consideration. The commission held many hearings and heard contradictory testimony from representatives of the

city and police department. While the commission held, as set forth in an analysis of its opinion, that the new rank had new duties and responsibilities, nevertheless the whole matter is thrown into further confusion by the directions contained in the conclusion of the opinion. On the one hand the commission states the job specifications may be similar but the practice is different, and on the other hand the commission says that we cannot look to practice but must look to job specifications. After considerable testimony the commission really failed to answer both of these questions but directed the pay and classification service to do so and further directed the service to inquire into the feasibility of a third classification. No evidence was presented to the court regarding the pay and classification division's progress along these lines, if any was made or even attempted.

This case indeed presents a very grave question of policy. The situation is strikingly similar to the one we faced in Muller v. Philadelphia, C. P. 2, December term, 1954, no. 2056 (1955). Here, too, we have another case of unrest and dissatisfaction, with resultant damage to the morale and well-being of the men in the police department, all of which has been caused by the failure of the commission to make a clearcut policy decision and to put it into effect smoothly and efficiently.

What we said, however, in the Muller case is wholly applicable here:

". . . we conclude that the decision to use or reject these ratings lies within the discretion of the personnel director and other administrative officers involved. In so holding we are not approving or condoning the procedures or the practices that existed but in view of all the circumstances of the case, particularly the adminministration of a new system in its early stages, we do

not think that an injunction should issue. We are of opinion that the decision rests within that broad area of administrative discretion . . ."

Accordingly, we make the following

### Conclusions of Law

1. As a matter of law, plaintiffs have failed to show fraud in the reclassification and otherwise have failed to show such irregularities as would empower this court to grant the relief sought: Addison v. Philadelphia, supra; Whisted v. Philadelphia, supra.

2. As a matter of law the decision of the civil service commission is valid and enforceable and the findings of that commission are binding upon plaintiffs.

### Decree Nisi

And now, to wit, October 22, 1956, this cause having come on to be heard, upon consideration of the pleadings, briefs and applicable law, it is ordered, adjudged and decreed:

1. That the complaint be dismissed and the relief sought by plaintiffs be denied.

2. That those stipulations by and between the city and counsel for plaintiffs setting forth that the city shall take no action to recover any sums of money paid to plaintiffs in excess of that compensation due to them as sergeants of the police force and that any other emoluments or benefits given them to the date of this decree be retained by plaintiffs and be made part of this decree and order.

3. That the costs of the proceedings shall be paid by the city.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 20 days, either party may present a form of final decree to be entered in the case.