## Bartle v. Zoning Board of Adjustment

614

*Austin Miller Lee*, for plaintiff.

*Frank F. Truscott*, for intervening defendant.

*Gordon Cavanaugh*, Assistant City Solicitor, and *David Berger*, City Solicitor, for defendant.

BROWN, P. J., May 22, 1957.—This is an appeal from the decision of the zoning board of adjustment sustaining the action of the zoning administrator of the department of licenses and inspections in changing the official zoning maps of the City of Philadelphia on October 24, 1956, from a zoning classification of partly "A" residential and partly "C" residential to a designation of shopping center no. 2.

In March, 1956, a bill was introduced in the City Council of Philadelphia for the purpose of changing the zoning classification of the property located on the southeast side of Domino Lane from Ridge Avenue to Silverwood Street, Philadelphia. After a public hearing was held on the ordinance, which was known as bill no. 371, affidavits of protest were filed with the president of city council. Subsequently, on September 27, 1956, this bill was voted upon and passed. Eleven councilmen voted in favor of the passage of the bill and three voted against it. Although the Philadelphia Home Rule Charter provides

for 17 councilmen, at that time there were 16 councilmen actually in office and one vacancy. On October 11, 1956, the ordinance was signed by the Mayor of the City of Philadelphia. Thereafter, the change in the official zoning maps of Philadelphia was made in accordance with the terms of the ordinance. An appeal was taken from that action to the zoning board of adjustment. After a hearing before the board, at which testimony was presented, the board decided that the zoning classification was properly changed, and the appeal was dismissed. A writ of certiorari was then issued which brought the case to this court.

It has been provided by an act of the General Assembly of the Commonwealth of Pennsylvania that cities of the first class are "authorized and empowered to regulate and restrict, by ordinance . . . the location, use and occupancy of buildings, structures and land, for trade, industry, residence or other purposes, so that such uses may be permitted in or excluded from certain portions or sections of such cities, or subject to special regulations": Act of May 6, 1929, P. L. 1551, sec. 1, 53 PS §14752.

"The Council of such city shall provide for the manner in which such regulations and restrictions, and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However no such regulations, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such city": Act of May 6, 1929, supra, sec. 4, 53 PS §14755.

"Such regulations, restrictions and boundaries may, from time to time, be amended, supplemented, modified or repealed. In case, however, of a protest against

any such change, duly signed and acknowledged by the owners of twenty (20) percent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or adjoining on the sides thereof extending one hundred (100) feet therefrom, or of those directly opposite thereto extending one hundred (100) feet from the street frontage of such opposite lots, such change shall not become effective except by the favorable vote of three-fourths of all the members of the council of such city. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments": Act of May 6, 1929, supra, sec. 5, 53 PS §14756.

The Ordinance of the City of Philadelphia of December 6, 1955, which prescribed the "procedure to be followed in enacting ordinances which deal with zoning classifications, reclassifications, conditions and restrictions, and other zoning matters where more than twenty (20) percent of the owners of land immediately adjacent thereto shall protest any proposed change; and" which superseded "inconsistent legislation", provided in section 1 that: "The procedure to be followed with respect to the enactment of ordinances which deal with zoning classifications, reclassifications, conditions and restrictions and other zoning matters shall and need only conform in every respect to the procedure for the enactment of all other ordinances of the City as prescribed in the Philadelphia Home Rule Charter, except that notice of public hearings on all zoning ordinances shall be not less than fifteen (15) days instead of the five (5) day notice required for all other ordinances; provided, that any additional requirements relating to the enactment of zoning ordinances prescribed in the Philadelphia Home Rule Charter shall also be complied with."

Section 2 of the ordinance provided that: "Section

5 and 7 of the Act of May 6, 1929, P. L. 1551 and all other provisions of the said act inconsistent with this ordinance are hereby superseded": Ordinances of the City of Philadelphia, 1955, pages 877-879.

Thus, this ordinance merely requires that a zoning ordinance be adopted in the same way as all other ordinances of the city are enacted, that is, by a simple majority vote of city council, and not by a favorable vote of three-fourths of the members of the council, even when more than 20 percent of the owners of land immediately adjacent enter a protest.

Accordingly, it must be determined whether the provisions of the Act of May 6, 1929, of the General Assembly, or those of the Ordinance of December 6, 1955, enacted by the council of Philadelphia, govern the instant case. There is no doubt that the zoning change which is challenged obtained a majority of the votes of the council. Accordingly, if the procedure as prescribed in the ordinance is valid and binding, the action of the zoning board of adjustment should be affirmed.

Under the First Class City Home Rule Act, a city taking advantage of the act "and framing and adopting or amending its charter thereunder shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions", and the charter of any such city may provide "for the exercise of any and all powers relating to its municipal functions, not inconsistent with the Constitution of the United States or of this Commonwealth, to the full extent that the General Assembly may legislate in reference thereto as to cities of the first class, and with like effect, and the city may enact ordinances, rules and regulations necessary and proper for carrying into execution the foregoing powers and all other powers vested in the city by the

charter it adopts or by this or any other law": First Class City Home Rule Act of April 21, 1949, P. L. 665, sec. 17, 53 PS §13131.

There is nothing in this act which limits the power of the city to zone, and it is not disputed that this power may properly be exercised by the council of Philadelphia. There is dispute, however, with respect to the manner in which this power may be employed and the procedures to be utilized in the situation present in this case. As has been seen, city council has adopted an ordinance which was deemed to be necessary and proper for carrying into execution the power to classify areas of the city into zoning districts. This action was clearly within the grant of power contained in the Home Rule Act.

In a case which dealt with the procedural requirements for the enactment of zoning ordinances under the Act of May 6, 1929, supra, it was held that an ordinance, which was enacted without observing the procedure therein prescribed, was invalid. However, the decision was based upon the fact that there had not been adopted any clear expression of an intention in the Philadelphia Home Rule Charter to supersede or repeal the provisions of the Act of 1929: Kelly v. Philadelphia, 382 Pa. 459, 471. A reading of that opinion discloses that had there been a provision in the charter which was inconsistent with or expressly repealed sections 4 and 5 of the Act of 1929, supra, the procedural requirements for the enactment of zoning ordinances specified in these sections would not be binding on city council.

The provisions of the Ordinance of December 6, 1955, supra, were obviously adopted in view of the controlling principles of the Kelly case. These are set forth in the first "Whereas" clause of the ordinance. It is manifest that the purpose of this ordinance was to make certain that the procedure to be followed in

the enactment of zoning ordinances was "so utterly repugnant and irreconcilable" with the procedure provided by the Act of 1929, supra, "as to render it impossible for both to consistently stand together": Kelly v. Philadelphia, supra, 472. In fact, section 2 of the ordinance specifically provided that sections 5 and 7 of the Act of 1929 "are hereby superseded".

It has been definitely determined that the limitations on the power of the City of Philadelphia to exercise powers contrary to an act of the General Assembly apply only to "substantive matters of State-wide concern . . . and not to matters . . . which are of no concern to citizens elsewhere": Lennox v. Clark, 372 Pa. 355, 378-379. Surely, there are few matters which are of less State-wide concern and which are more local in scope than zoning inside the City of Philadelphia. Consequently, the council had the power and authority to adopt the Ordinance of December 6, 1955. Cf. Addison Case, 385 Pa. 48, 56. Although some of the decisions on the home rule powers of the City of Philadelphia dealt with charter provisions which were in conflict with acts of the General Assembly, by no means does it follow that such a statute can only be overridden by a provision of the charter. This was demonstrated beyond peradventure in a decision which held that a mere administrative regulation unsupported by an ordinance of the Philadelphia City Council can nevertheless supersede an act of the General Assembly: Ebald v. Philadelphia, 387 Pa. 407, 408, 7 D. & C. 2d 179, 183-184. Hence, there can be no reasonable dispute that where, as in the instant case, the council acts on a matter which is of purely local concern in a manner inconsistent with a State law, the ordinance must prevail. Consequently, the Ordinance of December 6, 1955, which authorized the changes in the zoning maps of the City of Philadelphia, was validly enacted.

For the foregoing reasons, the appeal from the decision of the zoning board of adjustment was dismissed.