**Staton Appeal**

*Mary Bell Hammerman*, for appellant.

*Leonard L. Ettinger*, Assistant City Solicitor, for Philadelphia Civil Service Commission.

SPAETH, J., July 11, 1969.—

## NATURE OF THE CASE

This is an appeal from an order of the Philadelphia Civil Service Commission.

## FACTS

On August 19, 1966, in the early evening, an altercation took place inside the Club Belmont, 898 North Belmont Avenue, Philadelphia, Pa. The principals involved were Police Officer Leroy Staton and Morris Dewberry. Shortly after the altercation, another police officer, responding to a radio call, saw Dewberry in front of the Club Belmont carrying a rifle, and apprehended him. Dewberry and three people

who said that they were witnesses to the altercation were taken to a police station. Staton, upon learning of Dewberry's arrest, called the police station and identified himself as a participant in the altercation, and came down to the police station to give a statement.

Statements were taken during the latter part of the evening of August 19 from Dewberry, Staton, and the three people who said they were witnesses to the altercation: Myrtle Burns, Delloris Brennan, and Elbert Johnson.

Staton stated as follows: that he had gone into the Club Belmont, a taproom, on his way home following his tour of duty that day; that he was in police uniform; that he ordered and drank a bottle of Neweiler's Ale; that as he turned to leave, he was approached by Dewberry, whom he had known for years; that Dewberry accused him of no longer associating with his friends since he had become a policeman, and then made insulting remarks about his mother (Staton later stated that the remark was: "I've laid with your mother"); that he then told Dewberry that the remark was a lie, and demanded an apology; that upon Dewberry's refusal to apologize he struck Dewberry in the mouth, whereupon Dewberry fell off a stool onto the floor; that he told Dewberry "to never make remarks about my mother again"; that at this point the lady who ran the concession (Myrtle Burns) "ran up to me and said to me . . . you big bad cop if you want to shoot somebody shoot me"; and that he then left the bar and went home.

Dewberry's statement was that he had drunk about ½ pint of whiskey, did not remember what was said, but did remember being hit once by Staton and falling to the floor.

The relevant portion of Myrtle Burns's statement was as follows:

"I went up to the front part of the bar to serve a sandwich to a customer Officer known to me as Leroy. He had knocked an old man [off] of a stool onto the floor and I asked him why he had done it when he was standing over top of him and he said that he would shoot him if he moved. So I jumped in between them and I told him if he wanted to shoot someone to shoot me. And then I told him if you are going to shoot him take him outside. And then the old fellow got up and went outside. And then he followed him outside. And I don't know what happened after that."

Delloris Brennan gave the following statement: that she was sitting at the back of the bar and Staton was talking to Dewberry and another fellow at the front of the bar; that she heard Staton say to Dewberry, "Don't say anything about my mother," and then heard him say it again; and that after Dewberry was on the floor Staton said, "If you move I will kill you."

Elbert Johnson also said in his statement that Staton said: "If you move, I will shoot you." Johnson's statement continued: "Then the lady with the concession stepped between them and said: 'If you shoot anybody shoot me.' "

Staton was charged on three counts or "specifications" of conduct unbecoming an officer, two for being "involved in a crime of moral turpitude": section 1.10 of the police duty manual, and one for "odor of alcohol on breath" while in uniform: Section 1.60 of the police duty manual. The two specifications charging moral turpitude were as follows:

"Specification 1: In that, by your own admission, you did strike Morris Dewberry . . . in the mouth with your fist knocking him to the floor of the Club Belmont . . . where you were drinking alcoholic beverages, while in uniform at approximately 6:30 P.M., August 19, 1966.

"Specification 2: In that, after knocking Morris Dewberry . . . to the floor of the Club Belmont with your fist, you did threaten him by saying, 'If you move, I will kill you', indicating you have no regard for your responsibility as a member of the Police Department."

Staton was also charged with neglect of duty for "being found in any alcoholic beverage licensed establishment, in full uniform, or in part uniform, while not in performance of duty": Section 5.06 of the Police Duty Manual.

A hearing was held on these charges before the police board of inquiry. The only witness to any part of the altercation who testified was Staton. His testimony was an elaboration of his earlier statement. As in his statement, he admitted being in the taproom in uniform, having a drink there, and striking Dewberry. He specifically denied threatening to shoot Dewberry or otherwise threatening Derberry with physical violence, which was consistent with his earlier statement. The only other person with first hand knowledge of any of the charges who testified was Lieutenant Kachigian, who said that when he spoke with Staton at the police station during the investigation on the evening of August 19, 1966, Staton was "perfectly sober" and had no odor of alcohol. Myrtle Burns, Delloris Brennan, and Elbert Johnson were not present at the hearing; their statements, however, were considered as part of the evidence before the board.

An evaluation of Staton was read into the record. The author of the evaluation, who stated in the evaluation that he was a lieutenant who has been one of Staton's superiors for about 5 months before the altercation, was not present at the hearing. The evaluation was based largely on the annual performance rating of Staton, which had been prepared by another

officer who was also not present at the hearing. The rating showed Staton as superior in work habits, satisfactory in quality of work and relationship with people, and as needing improvement in initiative and dependability.

Staton was not represented by counsel at the hearing. On this subject the following colloquy took place at the hearing:

"THE ADVOCATE: Before we start; Policeman Staton, did you talk to the F.O.P. [Fraternal Order of Police] about your case?

"PLCMN. STATON: 'Sir, I wasn't aware I could until Friday, another officer told me I should have.'

"THE ADVOCATE: 'Were you aware you could have counsel of your own if you needed it?'

"PLCMN. STATON: 'No, I wasn't. I don't think —I didn't think I could present one here.'

"THE ADVOCATE: 'I feel sure the F.O.P. upon receiving this case, would not, probably, not offer or furnish any legal aid and it would be up to the policeman himself to get any legal aid he would feel he would need.'

"PRESIDENT OF THE BOARD: 'Yes, continue.'" (Police board of inquiry notes of testimony pp. 4-5.)

The board found Staton guilty of all the charges against him, and recommended that he be dismissed from the police force. He was dismissed, effective October 17, 1966.

Staton appealed his dismissal to the Philadelphia Civil Service Commission. The appeal was heard on April 20, 1967. This time Staton was represented by counsel. It was the position of Staton's counsel that neither the statements given at the police station following the altercation, nor the transcript of the hearing before the police board of inquiry, were admissible in the proceeding before the civil service commis-

sion, and that all witnesses should be brought in to testify before the commission. However, the commission admitted into evidence the statement that Staton had given at the police station following the altercation, and also the transcript of his testimony before the police board of inquiry. With respect to the other statements given at the police station and the transcript of other testimony before the police board of inquiry, the commission reserved decision. The principal action taken by the commission was to remand the case to the police commissioner "for the taking of such testimony as Mrs. Hammerman [Staton's counsel] or the Police Department wishes to present." The commission appears to have chosen this course of action because Staton had been without counsel before the police board of inquiry and his counsel before the commission indicated that she had additional evidence that the board had not heard. Staton's counsel, however, wishing to present all her evidence to the commission, objected to the remand procedure.

Despite the remand, the police commissioner did not open the case. Instead, he advised the civil service commission that:

"The case has been reviewed in all aspects, and the original action of suspension and dismissal of Mr. Staton is hereby affirmed". Letter of Frank L. Rizzo to Sidney B. Dexter, Chairman of the Civil Service Commission of Philadelphia, dated June 30, 1967.

The case thus came before the civil service commission again on August 17, 1967. At that time it appeared to be understood by both counsel and by the commission that the commission would hear whatever evidence Staton's counsel might have that had not been presented to the police board of inquiry. Staton's counsel called Herman Roberson, the bartender on duty at the Club Belmont at the time of the altercation. He testified that he had not heard any

of the discussion between Staton and Dewberry, and that neither could Myrtle Burns or Delloris Brennan could have heard what was said, because, at the time of the altercation, they were at the opposite end of the bar from Staton and Dewberry, and because the bar was very noisy. Roberson also testified that he had served Staton a beer, and that Staton was in uniform.

At the termination of this second meeting of the civil service commission, the assistant city solicitor moved that "the notes of testimony of the Police Board of Inquiry and the investigation folder," which included the statements made at the police station following the altercation, be admitted in evidence: notes of testimony before the Philadelphia Civil Service Commission, Appeal of Leroy Staton, p. 20. There was no objection at this time by Staton's counsel. However, just before the assistant city solicitor made his motion, Staton's counsel had made the following statement:

"We are admitting that Mr. Staton struck Mr. Dewberry, according to Mr. Staton's testimony, because Mr. Dewberry insulted his mother in rather frank language. However, in his statement and in the testimony, Mr. Staton, who certainly cooperated with the police in giving a statement and appearing, denied that he said anything about killing Mr. Dewberry, or made any threats or anything of a threatening manner with any gun. The testimony here today corroborates it. There has been no testimony of any of the other parties that signed statements shortly after the incident. I believe that this constitutes hearsay testimony. They are not here for the purpose of cross-examination, so I think it has very little value": Notes of Testimony before the Philadelphia Civil Service Commission, Appeal of Leroy Staton, pp. 17-18.

While the notes of testimony of the commission's hearing on August 17, 1967, give no indication that the commission ruled on the assistant city solicitor's motion that the notes of testimony from the police board of inquiry hearing and the investigation folder be admitted in evidence by the commission, the commission's opinion following this hearing demonstrates that the motion was granted: Opinion of Philadelphia Civil Service Commission, Appeal of Leroy Staton, September 14, 1967, p. 2, notes 1 and 2.

In its opinion of September 14, 1967, the civil service commission denied Staton's appeal. The commission explained:

"The appellant freely admits his presence in the bar in uniform, in defiance of known departmental regulations, and the other events which followed.

"Under these circumstances, we cannot find that the Police Commissioner abused his discretion in any manner by imposing the discipline appealed from": Opinion of Philadelphia Civil Service Commission, Appeal of Leroy Staton, September 14, 1967, pp. 2-3.

The commission did not discuss any evidence other than appellant's prior statements. Thus, in the context of the commission's opinion, it appears that the commission, in its reference to "the other events which followed," meant only events that were described by appellant in his prior statements.

Staton appealed to the court of common pleas, which entered the following order:

"And now, to wit, this 8th day of October, 1968, after hearing argument on appeal from the Civil Service Commission and a review of the testimony submitted the court orders that the above case be referred back to the commission for further hearing

and report thereon to the court": City of Philadelphia v. Leroy Staton, October term, 1968, no. 91, Reimel, J.

At the hearing on this remand, Staton's counsel called Dewberry. The essence of Dewberry's testimony was that he had no memory, because he had been "drinking pretty good," of what he had said to Staton or Staton to him. On February 11, 1969, the civil service commission again denied Staton's appeal. In the opinion accompanying the denial, the commission, referring to the court's order of remand, stated that the

"Court has not furnished us with any guide line setting forth that on which we are to report. However, counsel has raised with us at the hearing and we heard argument on two questions only": Opinion of Philadelphia Civil Service Commission, Appeal of Leroy Staton, Feb. 11, 1969, p. 2.

The commission went on to say that these two questions were "that appellant was not represented by counsel at the police board of inquiry": Id. at 2, and "that the acts committed by appellant did not justify his dismissal in that the Police Manual provided a lesser penalty. . . ." Id. at 3.

With respect to the first question, the commission indicated that if Staton was entitled to counsel before the police board of inquiry, "this deficiency" had been cured because "we invited her [Staton's counsel] to present and heard such additional testimony as she wished to offer before rendering our opinion": Id. at 2. With respect to the second question, the commission held that the police commissioner "is not controlled by the Manual", and "that the real issue is whether or not the Police Commissioner abused his discretion . . .": Id. at 3. The commission then stated:

"Among the pertinent facts to be considered were the following: that appellant had served approximate-

ly one year with the department, that appellant's second-month probationary report was "Satisfactory;" his fifth-month report indicated "Improvement Needed;" and his 1966 rating was "Satisfactory" [footnote omitted]; and finally that appellant pled guilty to the charge of drinking alcoholic beverages inside the Club Belmont while in uniform. In addition, the bartender of the Club Belmont testified before this Commission that he served appellant and that appellant was in uniform, including his service revolver [footnote omitted]. Considering all the factors, we could not conclude that the Commissioner abused his discretion": Id. at 3-4.

The commission concluded by stating that "we are not moved to recede from our previous order and opinion": Id. at 4.

Staton renewed his appeal,[1] and it is this appeal that is presently before the court.

## DISCUSSION

### 1. The Scope of Review

Section 7-201 of the Philadelphia Home Rule Charter provides in part that:

"Findings and decisions of the [Civil Service] Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds."

Some elaboration on this provision is contained in the following statements in paragraph 5 of the annotation to section 7-201:

---

[1] He did so simply by filing an order that the matter should be placed "on a special list for argument before the Hon. Theodore Reimel." Instead it was placed on the Consolidated Motion list. Neither side has questioned this procedure, and it appears within Judge Reimel's order of October 8, 1968, directing a "further hearing and report thereon to the court."

"The Charter precludes an independent review of the evidence by any court. The sole grounds to sustain a further appeal to the courts are lack of jurisdiction of the Commission, a failure of procedural due process, and a failure to conform with Charter requirements."

In Addison Case, 385 Pa. 48, 122 A. 2d 272 (1956), the court made clear that this limitation of review is to be strictly observed by the courts. In accordance with this limitation, the only question presented in this proceeding is whether there was a failure of procedural due process.

### 2. Procedural Due Process in Appeals Before the Civil Service Commission

Appellant contends that the decision of the civil service commission denying his appeal must be set aside because he was "unrepresented by counsel when the charges against him were heard; and he was denied the confrontation of witnesses against him for the purposes of cross-examination": appellant's reply brief, page 1. This contention raises the question of what procedural requirements apply to appeals before the Philadelphia Civil Service Commission.

It would seem that the Philadelphia Home Rule Charter, in providing that dismissed city employes shall have the right to appeal their dismissal to the Philadelphia Civil Service Commission and to present evidence to the commission, contemplates that the employes shall be given a fair hearing. This is borne out by paragraph 5 of the annotation to section 7-201 of the charter, which makes clear that "procedural due process' is required in appeals to the Philadelphia Civil Service Commission. At the same time, section 7-201 states that in these appeals "technical rules of evidence shall not apply." This

limitation on procedural requirements is elaborated on in paragraph 3 of the annotation to section 7-201 of the Philadelphia Home Rule Charter, supra, in the following manner:

"Technical rules of evidence are not applicable because the proceeding is an administrative one and fairness to the employee and to the City requires that all facts pertaining to the case be presented regardless of any legal, exclusionary rules of evidence."

It thus seems that the proper interpretation of the charter is that dismissed employes shall be given a fair hearing in which relevant evidence is not excluded on grounds unrelated to the validity of the fact finding process.[2]

A right as basic as the right to counsel, which is guaranteed in criminal cases by the sixth amendment and has been held binding on the states through the fourteenth amendment in Gideon v. Wainwright, 372 U.S. 335 (1963), is essential to "procedural due process." The right to counsel in no way interferes with the presentation of relevant facts to the civil service commission. In fact, quite to the contrary, the representation of a dismissed employe by counsel goes a long way toward assuring that the evidence will be fairly presented. It is not surprising, therefore, that in Deal v. Philadelphia Civil Service Commission, 405 Pa. 136, 163 A. 2d 323 (1961), the court recognized in *dictum* that the right to counsel applied to proceedings before the Philadelphia Civil Service Commission. Speaking of appeals before the commission, the court stated:

[2] Examples of grounds unrelated to the validity of the fact-finding process might be illegal seizure or failing to give warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). Evidence objected to on these grounds is generally competent, exclusion being thought necessary to protect the person and property of defendant and citizens in general. See Miranda v. Arizona, supra, at 467 and Mapp v. Ohio, 367 U.S. 643, at 655-56 (1961).

"Due procedure is provided for in administrative hearings by the Act of June 4, 1945, P.L. 1388, §33, 71 P.S. §§ 1710.31-1710.34, and is summed up in *Addison Case* . . . as follows: 'he had due notice of the hearing . . . appeared there, was represented by counsel and testified in his own behalf' ": 405 Pa. at 139, 173 A. 2d at 325.[3]

Similarly, the right of confrontation and cross examination is a basic right, essential to "procedural due process." Thus, in Pointer v. Texas, 380 U.S. 400 (1965), it was held that the guarantee of the Sixth Amendment that an accused be confronted with the witnesses against him includes the right of cross examination through counsel and is so fundamental as to be made obligatory on the states through the Fourteenth Amendment. In arriving at this holding, the court stated:

"There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal:" 380 U.S. at 405.

The Supreme Court of Pennsylvania has also accorded a high priority to the right of cross examination. Citing Pointer v. Texas, supra, the court stated in Commonwealth v. Lopinson, 427 Pa. 284, 300 (1967) that:

"It is certainly true that cross-examination is a

---

[3] The Administrative Agency Law of June 4, 1945, P.L. 1388, Section 11, 71 PS §1710.11 (1962), referred to in the above quotation, provides, although in a different section than that referred to by the court, that "Any party may be represented before an agency." While the Administrative Agency Law, supra, does not apply to proceedings before the Philadelphia Civil Service Commission, the court apparently considered that its provisions were relevant by way of analogy.

vital and fundamental part of a fair trial. Full cross-examination of a witness upon the substance of his direct testimony is an absolute right, the denial of which is error of constitutional dimensions."

It is true that the right to confront and cross-examine witnesses can lead to exclusion of evidence. However, the purpose of the right is not to exclude evidence but to require that it be fully and fairly presented, as statements not made in the presence of the interested parties and not subject to cross examination by them are likely to be distorted or incomplete.

Accordingly, this court holds that at a hearing on an appeal to the civil service commission, the appellant is entitled to be represented by counsel, and to be confronted by, and to cross examine, witnesses against him.

### 3. *Application of the Above Principles to the Present Case*

(a) Confrontation and cross examination of witnesses

Neither Myrtle Burns, nor Delloris Brennan, nor Elbert Johnson ever testified against appellant, either before the police board of inquiry or the Philadelphia Civil Service Commission. Yet, their statements, taken at the police station several hours after the altercation, were admitted in evidence by both the board and the commission, and constituted the only evidence in support of the charge that appellant, after he hit Dewberry, threatened to kill him if he moved. The board found appellant guilty of this charge, among others, and recommended that appellant be dismissed from the police force. Neither the findings of the board nor appellant's dismissal were disturbed by the commission.

Clearly, appellant did not have the opportunity to cross examine the persons whose statements

were used against him. The question is: Did this constitute a violation of appellant's right of confrontation and cross examination?

It may be suggested that appellant waived this right. However, appellant's counsel on several occasions made clear her position that hearsay statements were not admissible before the civil service commission: see pp. 6, 7 and 8, supra. In doing so, she preserved her client's right of confrontation and cross examination.

In addition, although there are recognized exceptions to the right of confrontation and cross examination, as, for example, in the case of dying declarations, this case falls within no such exception. Assuming that because of the less strict evidentiary requirements that govern appeals to the civil service commission, a broader range of exceptions should be recognized as applicable to hearings before the commission than in criminal trials, still there can be no basis for an exception here, as there was not even an attempt to show that the witnesses could not be brought to testify before the commission.

There remains the question of whether appellant was prejudiced by the use of the statements of Myrtle Burns, Delloris Brennan, and Elbert Johnson. Although the statements were admitted into evidence by the civil service commission, it is not clear how they influenced the commission, if at all, as the commission made no specific findings of fact, and did not even make clear what charges, or "specifications," against appellant it found to have been proved by the evidence.[4] What is clear, however, is that the police board of inquiry, in recommending that ap-

---

[4] In its first opinion, the commission seemed to indicate that it accepted as true those facts admitted by appellant in his statements, but in the second opinion the commission, in stating its reasons for upholding the dismissal, referred only to the "speci-

pellant be dismissed from the police force, acted at least in part on the basis of the statements. Appellant, therefore, was prejudiced by the statements. Even if the commission was not influenced by the statements, it allowed their influence to remain by not requiring the police commissioner to reconsider his decision to dismiss in light of specific findings of fact made by the commission on the basis of competent evidence, produced at a hearing where the right of confrontation and cross examination was preserved.

Thus, appellant's right of confrontation and cross examination was violated by the use against him of the statements of Myrtle Burns, Delloris Brennan, and Elbert Johnson.

(b) Right to counsel

It will be recalled from the recitation of the facts of the case: see p. 661, supra, that appellant was represented by counsel on his appeal to the civil service commission, but was not represented by counsel before the police board of inquiry. Moreover, it is evident from the transcript of the hearing before the board that appellant was never informed that he could be represented by counsel before the board: see p. 662, supra. To ascertain the legal consequences of this situation, it is first necessary to understand the role of the board.

The police board of inquiry has no official status. The police commissioner is under no obligation to have any kind of hearing before dismissing a policeman from the force. As the Supreme Court observed

---

fication" to which appellant had pleaded guilty: see p. 665, supra. The commission never gave any indication of whether it found the evidence proved the specifications not admitted by appellant in his statements, namely, that he threatened to kill Dewberry, and that he had the odor of alcohol on his breath.

in Perry v. Civil Service Commission, 403 Pa. 643, 645, 170 A. 2d 580, 581-82 (1961):

"The Police Board of Inquiry, an informal tribunal consisting of members of the Police Department, is an administrative device not provided for by civil service regulations, statute, ordinance or charter provision. The Board has no other function than when convened by the Police Commissioner, to aid him in making findings and recommendations in disciplinary cases. He has no legal obligation to use the Board or continue its existence and even if he does use it, he is not obligated to follow its recommendations."

Two conclusions follow from the fact that the police board of inquiry has no official status. The first conclusion is that the board cannot adversely affect the right of a dismissed employe, under section 7-201 of the Philadelphia Home Rule Charter, to receive a hearing comporting with basic due process requirements. The second conclusion is that the board is not restricted in the procedures it chooses to follow.[5]

Applying these conclusions to appellant's claim concerning denial of counsel, it is clear that the mere fact that appellant was not represented by counsel before the police board of inquiry does not constitute a legally cognizable claim. However, there is a substantial question as to whether appellant was in effect denied counsel before the

---

[5] This court does not mean to suggest that the police board of inquiry does not serve a valuable function, for it indeed does. Without some kind of hearing being provided within the police department, dismissal of a policeman would occur before he received any hearing, as the hearing conducted by the Philadelphia Civil Service Commission comes after dismissal. It reflects an admirable sense of fairness on the part of the police commissioner that he requires that an inquiry be made into the charges against a policeman before the policeman can be dismissed.

civil service commission when the commission admitted into evidence the record of the hearing before the board. To state the question in another way: Did the commission incorporate into its own hearings the absence of basic due process procedures before the board, and thereby fail to give a hearing comporting with basic due process requirements?

With respect to that part of the record of the hearing before the police board of inquiry that consisted of statements given by Myrtle Burns, Delloris Brennan, and Elbert Johnson, it has already been observed that the civil service commission's admission of those statements into evidence violated appellant's right to confront and cross examine witnesses. In addition, even if the witnesses had testified before the board, their testimony would not have been admissible before the commission, because, as already noted, the right to cross examine includes the right to cross examine through counsel, and appellant did not have counsel when he was before the board, and, in fact, had never been informed that he could have counsel.

The only other damaging evidence in the record before the police board of inquiry, unless the evaluation of appellant as a police officer be considered damaging, is appellant's statement several hours following the altercation and his testimony before the board.[6] If the privilege against self incrimination protects a policeman from having prior statements he has made, which were not knowing and intelligent, admitted in evidence before the Philadelphia Civil Service Commission, then Miranda v. Arizona, 384

[6] Although Morris Dewberry's statement, given shortly after the altercation and made a part of the record of the police board of inquiry, contained much the same information as appellant's statements, it is not relevant here, as Dewberry was called as a witness for appellant in the proceedings before the commission and testified to substantially all that he said in his statement.

U.S. 436 (1966), would seem to require that a policeman have counsel at the time he makes a statement, or that he have waived this right after being told of it, in order that the statement be admissible before the commission. Appellant, as has been seen, with respect to both of his statements, was neither represented by counsel nor told he had a right to be. In addition, if prior statements of a policeman can only be admitted before the commission if they are knowing and voluntary, appellant's statements were inadmissible on the ground of involuntariness because, under the Philadelphia Home Rule Charter, supra, section 10-110, appellant, when he gave his statements, was required to answer questions put to him or forfeit his position as an employe of the city.[7] Thus, with respect to whether appellant's prior statements were properly admitted in evidence before the commission, it must be determined whether appellant's privilege against self incrimination required that these statements be knowing and voluntary.

A recent United States Supreme Court case answers this question. In Garner v. Broderick, 392 U.S. 273 (1968), a policeman who was called to testify before a grand jury refused to sign a "waiver of immunity" after he had been told he would be discharged if he did not sign. He was discharged solely for this refusal. While the court held that a discharge

---

[7] There is no question that appellant had knowledge of this provision, for he was told by Captain Richard Clegg, who questioned him at the police station several hours after the altercation, that "I want to inform you that I am conducting an investigation for the police commissioner. Under the provisions of the home rule charter and civil [service] regulations you are required to answer all questions truthfully and honestly to the best of your ability. Failure to do so will result from [sic] dismissal from the police department, do you understand this?" (Statement of Officer Leroy Staton, August 19, 1966, Record of Philadelphia Civil Service Commission in Appeal of Leroy Staton.)

based solely on this ground violated the policeman's privilege against self incrimination, the court stated:

"If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, . . . the privilege against self-incrimination would not have been a bar to his dismissal:" 392 U. S. at 278.

The rationale of Garner, supra, is that a city employe may be required to answer certain questions or forfeit his job, so long as his answers are not used against him in a criminal prosecution. See also Spevack v. Klein, 385 U.S. 511 (1967), and Garrity v. New Jersey, 385 U.S. 493 (1967).

While the questions asked appellant concerned his conduct while he was off duty, they were within the scope permitted by Garner, supra, as appellant's conduct bore directly on his suitability as a policeman and, in addition, appellant was in uniform while he engaged in this conduct. Thus, under Garner it was clearly not necessary for appellant's answers to be knowing and voluntary to be admissible before the commission. The circumstances, therefore, of appellant not having counsel and not having waived counsel when he answered questions and of his being required to answer the questions or forfeit his job, did not render his answers inadmissible.

With respect to whether it was proper for the civil service commission to admit the record of appellant's testimony before the police board of inquiry, another question must be asked: Was the interrogation of appellant before the board by the advocate such that appellant was prejudiced by not having counsel present? Even though the privilege against self incrimination does not require that appellant have

had counsel or have waived counsel when he made his statements in order for those statements to be admissible in appeals before the civil service commission, if appellant was prejudiced beyond the contents of his statement by the interrogation by the advocate, and if the questions asked in the interrogation violated basic rules of evidence, it would violate appellant's right to counsel to admit into evidence before the commission, where he was entitled to counsel, the record of the interrogation before the police board of inquiry. However, while appellant's counsel did properly object before the commission to one of the questions asked appellant by the advocate: see p. 5 of notes of testimony before commission, this court is satisfied that appellant was not prejudiced by the interrogation by the advocate.

Accordingly, the civil service commission properly admitted in evidence appellant's statement after the altercation and the record of appellant's testimony before the police board of inquiry.

### 4. Disposition.

To summarize, appellant was denied his right to confront and cross examine witnesses by the use against him of statements made shortly after the altercation by Myrtle Burns, Delloris Brennan, and Elbert Johnson. The question now is: To what relief is appellant entitled? The answer to this question requires consideration of the home rule charter provisions bearing on the dismissal of city employes.

Although the proceeding brought before the civil service commission by a dismissed city employe is referred to in section 7-201 of the home rule charter as an "appeal," section 7-201 also provides that in such appeals "both the appealing employee and the appointing authority involved shall have the right to be heard publicly and to present evidence," and

that "findings . . . of the Commission shall be in writing." Thus, the proceeding before the commission is a *de novo* fact finding proceeding.

It is true that the commission's role with respect to whether there is just cause for dismissal, given its findings of fact, is one of review. The annotation to section 7-303 of the charter, which provides that dismissal shall be for just cause only, states that "The standard is to be applied by the employee's superior and is subject to review only by the Civil Service Commission." However, review is not the function of the commission with respect to fact finding, where the drafters of the charter and the Philadelphia electorate intended that an impartial body hear evidence in accordance with basic due process procedures and determine whether the charges against the dismissed employe have been proved.

The basic error of the commission in this case was that it saw its role only as one of limited review of the police board of inquiry, and not as a *de novo* fact finding body. The commission, for example, made no specific findings of fact, and did not even make clear which "specifications," if any, it considered were proved, other than the specification to which appellant pleaded guilty: See p. 665 and footnote on p. 672, supra.

The commission's erroneous view of its fact finding function is also evidenced by the fact that it saw no need to hear testimony itself, except in so far as that testimony had not been heard by the police board of inquiry. This was particularly egregious in view of the fact that appellant had been denied the right to confront and cross examine witnesses in the proceedings of the board.

On remand, the civil service commission must, on the basis of competent evidence, make findings of fact. If the commission wishes to hear additional tes-

timony before making its findings, it should. If the commission's findings bear out the charges of which the police board of inquiry found appellant guilty, and if the commission believes these findings constitute just cause for dismissal, the proper disposition would be to dismiss the appeal. If, however, the commission does not find that appellant had the odor of alcohol on his breath or that he threatened to kill Dewberry, but does find him guilty of the course of conduct to which he admits, a more difficult question will be presented, for the commission will not have found appellant guilty of all the offenses on which the police commissioner based his decision of dismissal.

The solution to this question, should it be presented, is suggested by the provisions of the Philadelphia Home Rule Charter, supra, discussed above, and, in addition, by section 7-401(q) of the charter, which states, in part, that the regulations of the civil service commission shall provide for "Discharge . . . only after the person to be discharged . . . has been presented with the reasons for such discharge . . . specifically stated, and has been allowed a reasonable time to reply thereto in writing." The charter thus requires that the reasons of the appointing authority for dismissing a city employe shall be set forth, and that the employe shall be given a chance to answer in writing, before he can be dismissed. It would be inconsistent with these requirements, or with the commission's fact finding function, for the commission to dismiss an appeal where its findings bore out only some of the charges of the appointing authority, in this case the police commissioner. Rather, the proper procedure would appear to be that the commission remand the matter to the appointing authority to determine if the appointing authority wishes to dismiss the employe on the basis of the charges that have been borne out by competent

evidence. If the appointing authority does dismiss, and the dismissal is appealed, it would be left for the commission to review the appointing authority's determination that the charges constitute just cause for dismissal.

Finally, it should be noted that section 5-200(b) of the Philadelphia Home Rule Charter provides that "The [Police] Department shall train, equip, maintain, supervise and discipline the Philadelphia Police." It has not been argued before this court that this provision denies a policeman the right to appeal to the Philadelphia Civil Service Commission, and this is understandable, as section 7-301 of the Philadelphia Home Rule Charter makes clear that the civil service provisions of the charter apply to policemen. Thus, the charter intends that a policeman is entitled to a determination by the civil service commission as to whether the reasons given for his dismissal have been proved by competent evidence. The commission, however, should consider the police department's power of discipline in determining the amount of deference to give the police commissioner's determination that reasons given for dismissal, proved by competent evidence before the commission, constitute "just cause" for dismissal.

## ORDER

And now, July 11, 1969, the decision of the civil service commission is set aside and the matter is remanded to the commission for proceedings consistent with the opinion accompanying this order.